# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.<br>104-20 Queens Boulevard, Suite 1-C<br>Forest Hills, New York 11375<br><br>and<br><br>ST. MARKS PLACE ASSOCIATES<br>104-20 Queens Boulevard, Suite 1-C<br>Forest Hills, New York 11375<br><br>and<br><br>STELLAR CP LP<br>c/o Stellar Management, 10th Floor<br>New York, New York 10038<br><br>and<br><br>CASTLETON GP LLC<br>c/o Stellar Management, 10th Floor<br>New York, New York 10038<br><br>Plaintiffs,<br><br>- against -<br><br>UNITED STATES DEPARTMENT OF HOUSING<br>AND URBAN DEVELOPMENT; and ALPHONSO<br>JACKSON, AS SECRETARY OF THE UNITED<br>STATES DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT,<br><br>Defendants. | Case No. |

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, Bingham McCutchen LLP,

as and for their complaint against the above-named defendants, allege as follows:

## I.    __INTRODUCTION__

1.    This is an action for declaratory and injunctive relief and for an order in the nature of mandamus seeking (i) a declaration that the prepayment of a certain senior mortgage insured by the United States Department of Housing and Urban Development ("HUD") is permissible without the consent of HUD under 24 CFR section 207.14(a), as in effect at the time the mortgage was endorsed by HUD for insurance in 1977, and that said mortgage is therefore not subject to the requirements of Section 250(a) of the National Housing Act, 12 U.S.C. section 1715z-15(a) (the "NHA"); (ii) an injunction enjoining HUD from placing any restrictions or conditions on the prepayment of said mortgage, other than those contained in 24 CFR Section 207.14(a), as in effect at the time the mortgage was endorsed by HUD for insurance in 1977; and (iii) an order in the nature of mandamus compelling HUD to take any and all action required to withdraw and affirmatively countermand its prior rejection of Plaintiffs' notice of intent to prepay said mortgage.

## II.    __JURISDICTION__

2.    The jurisdiction of this Court is invoked pursuant to:

(a)    Title 28, Section 1361 of the United States Code, this being an action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to Plaintiffs;

(b)    Title 28, Section 1331(a) of the United States Code, this being an action arising under the Constitution, laws or treaties of the United States;

(c)    Section 10 of the Administrative Procedure Act (5 U.S.C. §§ 701 to 706), this being an action brought by persons suffering a legal wrong because of

agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute;

> (d)    Title 28, Sections 2201 to 2202 of the United States Code, this being an action in which Plaintiffs seek a declaration of their rights under Section 250(a) of the NHA, 12 U.S.C. §1715z-15(a) and 24 CFR Section 207.14(a); and

> (e)    Title 28, Section 1367, in that this action, being a civil action over which this Court has original jurisdiction, provides the Court with supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

### III.    VENUE

3.    Venue lies in this Court under Section 1391(e) of Title 28 of the United States Code.

### IV.    PARTIES

4.    Plaintiff St. Marks Place Housing Company, Inc. (the "Housing Company"), a limited profit housing company organized under Article II of the Private Housing Finance Law of the State of New York (the "PHFL"), is the nominal owner of record of an affordable housing project located in Staten Island, New York known as "Castleton Park Apartments" (the "Project"). Housing Company has a principal place of business at 104-20 Queens Boulevard, Suite 1-C, Forest Hills, New York 11375, and holds title to the Project for the benefit of plaintiff St. Marks Associates.

5.    Plaintiff St. Marks Associates ("St. Marks Associates"), a limited partnership organized under the laws of the State of New York, is the beneficial owner of

the Project, having a principal place of business at 104-20 Queens Boulevard, Suite 1-C, Forest Hills, New York 11375.

6.    Plaintiff Stellar CP LP ("Stellar CP") is a New York limited partnership with offices c/o Stellar Management, 10th Floor, New York, New York 10038.

7.    Plaintiff Stellar Castleton GP LLC ("Stellar Castleton") is a Delaware limited liability company with offices c/o Stellar Management, 10th Floor, New York, New York 10038.

8.    Defendant United States Department of Housing and Urban Development ("HUD") is a federal agency created, *inter alia*, to help communities meet their development needs, spur economic growth in distressed neighborhoods and provide housing assistance to the poor. HUD's principal office is located at 451 7th Street, S.W., Washington, D.C. 20410.

9.    Defendant Alphonso Jackson (the "Secretary") is the Secretary of HUD and the individual with ultimate decision-making authority on all HUD matters. Upon information and belief, Secretary Jackson's principal office is located at 451 7th Street, S.W., Washington, D.C. 20410.

## V.    BACKGROUND

10.    Plaintiff Housing Company is a limited profit housing company organized under Article II of the PHFL, which was formed for the purpose of acquiring, and now owns, the real property upon which the Project is situated. Article II of the PHFL is commonly known in New York as the "Mitchell-Lama Law," and affordable housing projects, such as the Project, organized pursuant thereto are regarded as being operated

under the "Mitchell-Lama Program" (unless and until such projects are bought out from and exit such program).

11.    On or about May 31, 2006, the owners of stock of plaintiff Housing Company, and plaintiff St. Marks Associates, jointly as sellers (plaintiffs Housing Company and St. Marks Associates together, the "St. Marks Plaintiffs"), and plaintiffs Stellar CP and Stellar Castleton (together, the "Stellar Plaintiffs"), jointly as buyers, entered into a contract pursuant to which the said sellers agreed to sell to the Stellar Plaintiffs the beneficial interest in the Project owned by plaintiff St. Marks Associates and all of the outstanding stock of plaintiff Housing Company (the "Contract").

12.    Under Section 35(2) of the PHFL, the St. Marks Plaintiffs have the absolute and unqualified statutory right to withdraw the Project from the Mitchell-Lama Program at any time after the twentieth (20th) anniversary of the date the certificate of occupancy was issued for the Project.

13.    The certificate of occupancy for the Project was issued more than twenty (20) years ago.

14.    Pursuant to the Contract, in an effort to initiate the statutorily guaranteed right to buy the Project out of the Mitchell-Lama Program, on June 28, 2006, the St. Marks Plaintiffs, with the advance knowledge and consent of the Stellar Plaintiffs, filed a Notice of Intent to Dissolve plaintiff Housing Company with the New York State Division of Housing and Community Renewal (the "DHCR"), the New York State agency with supervisory jurisdiction over New York State assisted Mitchell Lama projects such as the Project.

15.    The aforesaid Notice of Intent to Dissolve plaintiff Housing Company is required in connection with withdrawing the Project from the Mitchell-Lama Program because, upon the Project's exiting the Mitchell-Lama program, the Project's government subsidized or assisted mortgages are required to be paid off and the limited profit housing company owning the Project, here plaintiff Housing Company, is required to be dissolved (or reconstituted as a business corporation not subject to the provisions of the Mitchell-Lama Law).

16.    The Project was originally financed with a non-insured mortgage loan dated January 30, 1974 in the original amount of $19,715,000 (later increased to $20,990,000) made by the New York State Housing Finance Agency ("NYSHFA") to plaintiff Housing Company.

17.    The above-referenced mortgage loan was subsidized under Section 236 of the NHA but was not insured by HUD, and as such is commonly referred to as a "non-insured, Section 236 assisted loan."

18.    The Project was one of the portfolio of New York State and New York City financed non-insured, Section 236-assisted projects originally financed in the early 1970's, and then subsequently refinanced in the late 1970's under the authority of Section 207 of the NHA pursuant to Section 223(f) of the NHA and 24 CFR section 207.32(a)(k).

19.    Specifically, in 1977, the Project's existing non-insured, Section 236-assisted mortgage debt was bifurcated into a HUD-insured, Section 236-assisted senior mortgage (the "HUD Mortgage") in the original amount of $17,629,100 insured under Section 207 of the NHA pursuant to Section 223(f) of the NHA, and a non-insured,

Section 236-assisted subordinate mortgage (the "Subordinate Mortgage")[1] in the original

principal amount of $3,360,900, each dated October 13, 1977.

20.    On the first page of the mortgage note secured by the HUD Mortgage (the

"HUD Mortgage Note") there appears the following language:

> "Privilege is reserved to pay the debt in whole or in an
> amount equal to one or more monthly payments on
> principal next due, on the first day of any month prior to
> maturity at least thirty (30) days' prior written notice to the
> holder. * *  If this debt is paid in full prior to maturity and
> while insured under the National Housing Act, all parties
> liable for payment of this debt hereby agree to be jointly
> and severally bound to pay to the holder hereof any
> adjusted premium charge required by the applicable
> Regulations.    See 'Attachment A,' Paragraph 2
> incorporated herein by reference and made a part hereof."

A true and correct copy of the HUD Mortgage Note is attached hereto as Exhibit A.[2]

21.    At the bottom of the first page of the HUD Mortgage Note, the following

footnote was inserted:

> "**Subject to the prior approval of the Secretary of
> Housing and Urban Development."

See HUD Mortgage Note, Exhibit A hereto.

---

[1]    It is not disputed that the Subordinate Mortgage is not prepayable without the consent of HUD until the "HUD Release Date" (i.e., the earlier to occur of the date on which the HUD Mortgage Note is prepaid or the date on which the HUD Mortgage Note is no longer held or insured by HUD), whereupon the Subordinate Mortgage becomes prepayable without the consent of HUD.  Therefore, the Plaintiffs intend to prepay the Subordinate Mortgage immediately following the prepayment of the HUD Mortgage Note.

[2]    The requirement in the HUD Mortgage Note, as quoted in paragraph 20 above, for payment of "any adjusted premium charge required by the applicable Regulations," is based on section 207.253 of HUD's regulations in effect until April 29, 1972.  Those regulations generally required the payment of a premium to HUD equal to two percent of the original mortgage amount if prepayment occurred within the first five years after initial endorsement, or one percent or the original mortgage amount if the prepayment occurred after the first five years.  This HUD regulation was rescinded in 1972, and the present regulation in effect, 24 CFR section 207.253(a) (2006), which was in effect in 1977 when the HUD Mortgage was endorsed for insurance by HUD, states in part that "[n]o adjusted premium charge shall be due the Commissioner on account of [mortgage prepayment]."  Nonetheless, the HUD form of mortgage note used after 1972 with respect to the HUD Mortgage at issue here included the printed language requiring the payment of any adjusted premium charge.

22.    Neither Section 207 of the NHA nor Section 223(f) of the NHA, as in effect at the time the HUD Mortgage was endorsed for insurance, required HUD approval for prepayment of the loan.

23.    HUD's regulations at 24 CFR Part 207, as in effect in 1977, implementing Section 207 of the NHA, did not require HUD's approval for prepayment of mortgages insured under Section 207.  Specifically, 24 CFR Section 207.14(a), as in effect in 1977, provided as follows:

> "(a)    *Prepayment privilege*.  The mortgage shall contain a provision permitting the mortgagor to prepay the mortgage in whole or in part upon any interest payment date after giving the mortgagee 30 days' notice in writing in advance of its intention to so prepay."  (emphasis added)."

24.    HUD's regulations at 24 CFR 207.32a, as in effect in 1977, implementing Section 223(f) of the NHA, which provided the authority for the 1977 refinancing of the Project, likewise did not require HUD's approval for prepayment of the mortgage.

25.    There were in fact no statutes or HUD regulations in effect in 1977 which required or permitted that a forty (40) year prepayment lock-out be placed in the HUD Mortgage.

26.    The typed-in footnote language in the Mortgage Note purporting to require HUD's approval for prepayment at any time during the forty (40) year term of the HUD Mortgage (quoted in paragraph 21 above), is directly contrary to and inconsistent with the explicit language contained in HUD's regulations in effect in 1977, as quoted above,

which mandate that the mortgage note entitle the owner to prepay the mortgage upon thirty (30) days' prior written notice.[3]

27.    There is no statutory, regulatory or administrative basis for the inclusion in the HUD Mortgage Note of a requirement for HUD's consent to a prepayment of the HUD Mortgage Note.

28.    Upon information and belief, at no time did HUD explicitly or formally waive the requirements of Section 207.14(a) of the NHA to allow the inclusion of a provision requiring the consent of HUD to prepayment of the HUD Mortgage Note.

29.    The parties who prepared the HUD Mortgage Note did not have the authority to make changes in the HUD Mortgage Note that were inconsistent with, let alone contradictory to, the HUD regulations in effect at the time, and therefore, could not impose a forty (40) year long requirement for HUD consent to a prepayment of the HUD Mortgage Note when such prepayment privilege (without HUD consent) was a required term under the regulations in effect at the time the HUD Mortgage was endorsed for insurance by HUD.

30.    Where, as here, a HUD mortgage note contains a prepayment restriction (including language requiring HUD's consent to a prepayment), that conflicts with the applicable HUD regulations, the regulations supersede the conflicting mortgage note language and such conflicting language is thereby rendered void *ab initio* and of no force or effect.

---

[3]    Plaintiffs do not dispute that pursuant to Section 219 of the Department of Veterans Affairs, Housing and Urban Development and Independent Agencies Appropriation Act of 1999, a notice (commonly called a "Wellstone Notice," named after the late Senator Paul Wellstone) must be served specifying a prepayment window (for both the HUD Mortgage and the Subordinate Mortgage) of between 150 and 270 days after the service of such notice. A Wellstone Notice was duly served on all appropriate parties with respect to the Project together with the required updates thereto.

31.     Section 250(a) of the NHA states that "during any period in which an owner of a multifamily rental project is required to obtain the approval of the Secretary for prepayment of the mortgage," the Secretary may approve such prepayment only after making the determinations stated therein.[4]

32.     By letters to HUD dated December 1, 2006, March 30, 2007, July 31, 2007, and November 30, 2007, Plaintiffs notified HUD of their intention to prepay the HUD Mortgage Note.

33.     By letter dated April 17, 2007, Plaintiffs' counsel, at the request of HUD's New York Regional Office, provided to HUD a written summary, with relevant citations, of the reasons why no consent from HUD is required for the prepayment of the HUD Mortgage Note and therefore why Section 250(a) of the NHA is inapplicable to proposed prepayment.

34.     Upon information and belief, in or about June 2007, the Office of General Counsel of HUD advised the Secretary's office that Section 250(a) of the NHA is inapplicable to the prepayment restriction contained in the HUD Mortgage Note.

35.     Thereafter, on or about September 25, 2007, Plaintiffs' counsel met with representatives of defendant HUD in Washington, D.C., including HUD's General Counsel and other attorneys in HUD's Office of General Counsel, to discuss the Plaintiffs' plan to prepay the HUD Mortgage Note and the Subordinate Mortgage Note. At this meeting, Plaintiffs' counsel once again outlined for HUD the reasons why HUD's

---

[4]     For example, HUD's regulations in effect in 1977 for projects with mortgages insured by HUD under Section 221(d)(3) of the NHA and Section 236 of the NHA required in certain cases that HUD's approval be obtained prior to prepayment. See 24 CFR Sections 221.524 and 236.30, both as in effect in 1977. The HUD Mortgage Note for the Project was not insured under either of these provisions of the NHA, and thus is not subject to these requirements.

approval is not required for prepayment of the Mortgage Note and therefore why Section 250(a) of the NHA is inapplicable to the prepayment.

36.    Upon information and belief, in or about October 2007, the Office of General Counsel of HUD once again advised the Secretary's office of its conclusion that HUD's approval is not required for prepayment of the HUD Mortgage Note and that Section 250(a) of the NHA is therefore inapplicable to the proposed prepayment.

37.    Upon information and belief, in or about October 2007, sometime shortly after HUD's Office of General Counsel advised Secretary Jackson that HUD's approval was not required for the prepayment of the HUD Mortgage and that Section 250(a) of the NHA did not apply to the HUD Mortgage, Secretary Jackson met with New York's Senior Senator, the Honorable Charles Schumer, who, at that time, convinced the Secretary to advise the relevant parties that HUD's approval was required for the prepayment of the HUD Mortgage and that Section 250(a) of the NHA did apply to the HUD Mortgage for the Project, which, for the reasons stated herein, has no basis in law.

38.    Thereafter, by letter dated November 1, 2007, Plaintiffs' counsel notified Capmark Finance, Inc. ("Capmark"), the current holder of the HUD Mortgage Note, of the St. Marks Plaintiffs' intention to repay the HUD Mortgage Note in full on or about February 1, 2008, and requested that Capmark obtain HUD's approval of the form HUD-9807, Insurance Termination Request for Multifamily Mortgages. HUD requires that the insured mortgagee submit this form to HUD for approval prior to the prepayment of any HUD-insured multifamily mortgage, regardless of whether the HUD-insured mortgage loan itself requires HUD's approval for prepayment.

39.    In response to Plaintiffs' letters notifying defendant HUD of Plaintiffs' intention to prepay in full the HUD Mortgage Note, by letter dated December 20, 2007, and notwithstanding the advice of the HUD Office of General Counsel of the inapplicability of Section 250(a) of the NHA to the prepayment restrictions set forth in the HUD Mortgage Note, HUD informed Plaintiffs that, due to the prepayment restriction contained in the HUD Mortgage Note, the consent of HUD to the prepayment of the HUD Mortgage Note was required, the prepayment of the HUD Mortgage Note was subject to the restrictions of Section 250(a) of the NHA, and that HUD was denying Plaintiffs' request to prepay the HUD Mortgage Note.

40.    By notice dated December 20, 2007, defendant HUD also advised Capmark that the prepayment of the HUD Mortgage Note sought by plaintiffs was "not approved" by HUD.

41.    Based upon HUD's determination that its consent to the prepayment of the HUD Mortgage Note was required, HUD has placed several onerous and legally impermissible conditions upon Plaintiffs which HUD said must be satisfied before HUD will agree to provide its consent to the prepayment of the HUD Mortgage Note. Specifically, Defendant HUD has refused to provide Plaintiffs with HUD's consent to prepay the HUD Mortgage Note unless Plaintiffs agree to provide a minimum of $15,000 per unit in repairs/rehabilitation or replace two or more major building components, and to execute a rental use agreement that will be recorded in first lien position on the property until November 1, 2017.

42.    Defendant HUD based its denial of Plaintiffs' request to repay the HUD Mortgage Note on the language in the HUD Mortgage Note purporting to give HUD the

right to approve prepayment thereof.    Upon information and belief, as HUD's own Office of General Counsel concluded, such language contravenes the explicit requirements of the applicable regulations in effect at the time the HUD Mortgage was endorsed for insurance by HUD, and therefore such language is void *ab initio* and of no force or effect.

43.    By reason of the foregoing, HUD has acted in an arbitrary and capricious manner, in a manner infected with error of law and in manner constituting an abuse of discretion, in denying Plaintiffs' request to prepay the HUD Mortgage Note due to HUD's erroneous determination that Section 250(a) of the NHA applies to Plaintiffs' prepayment of the HUD Mortgage Note and that HUD's consent to such prepayment is required.

44.    Plaintiffs have an absolute right to prepay the HUD Mortgage Note and the consent of HUD is not required.

45.    By reason of HUD's December 20, 2007 notice to Plaintiffs and December 20, 2007 notice to Capmark, each stating HUD's refusal to approve the prepayment of the HUD Mortgage Note, the Project cannot exit the Mitchell-Lama Program because in order to exit the Mitchell Lama Program the HUD Mortgage and Subordinate Mortgage must be paid off, as a result of which Plaintiffs are unable to bring about the withdrawal of the Project from the Mitchell-Lama Program pursuant to their guaranteed right to do so under Section 35(2) of the PHFL.

46.    In any event, the footnote on the first page of the HUD Mortgage Note, containing the purported right of HUD to consent to the prepayment of the HUD Mortgage Note, must be read in light of "Attachment A" to the HUD Mortgage Note,

(which is expressly referenced on said first page). Pursuant to the express terms of "Attachment A," HUD's consent must be obtained only to a specified partial prepayment to be determined by HUD based on the rents being achieved by the Project on April 13, 1979 (whereupon the Mortgage Note was to be recast in a certain manner). More substantial partial prepayments, and prepayments in full, according to the terms of "Attachment A," do not require the consent of HUD and were allowed without HUD's consent simply upon "30 days' prior written notice."

47. Based on "Attachment A," the consent of HUD to a prepayment in full of the HUD Mortgage Note at this time is not required.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

48.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 above as if fully set forth herein.

49.    In December of 2006 (and pursuant to periodic updated notices sent thereafter) Plaintiffs notified defendant HUD of their intention to prepay the HUD Mortgage Note in full.

50.    In December of 2007, defendant HUD informed Plaintiffs that HUD's consent is required before Plaintiffs will be permitted to prepay the HUD Mortgage Note and that the HUD Mortgage Note was therefore governed by Section 250(a) of the NHA.

51.    Defendant HUD has refused to provide Plaintiffs with HUD's consent to prepay the HUD Mortgage Note unless Plaintiffs agree to provide a minimum of $15,000 per unit in repairs/rehabilitation or replace two or more major building components, and to execute a rental use agreement that will be recorded in first lien position on the property until November 1, 2017.

52.     Plaintiffs contend that Section 250(a) of the NHA is not applicable to the HUD Mortgage Note, that the language in the HUD Mortgage Note purporting to require the consent of HUD to the prepayment of the HUD Mortgage Note is void *ab initio* and of no force or effect, and that therefore no consent from HUD is required in order to prepay the HUD Mortgage Note.

53.     Plaintiffs alternatively contend that the prepayment restriction set forth in the HUD Mortgage Note, when read with reference to the terms and provisions of Attachment A to the HUD Mortgage Note, forming a part thereof, does not require the consent of HUD to a prepayment in full of the HUD Mortgage Note.

54.     Plaintiffs have suffered and will continue to suffer damages, harm and prejudice by virtue of Defendants' failure to permit Plaintiffs to prepay the HUD Mortgage Note, which is making it impossible for Plaintiffs to bring about the exit of the Project from the Mitchell-Lama Program.

55.     Plaintiffs have no adequate remedy at law other than this form of action to have their rights determined as to the matters herein set forth.    An actual case or controversy exists that requires the intervention of the Court.

56.     By virtue of the foregoing, Plaintiff is entitled to a judgment declaring (i) that the Defendants' refusal to permit Plaintiffs to prepay the HUD Mortgage Note is arbitrary and capricious, contrary to law, unsupported by substantial evidence and wrong on the facts, (ii) that the prepayment of the HUD Mortgage Note is permissible without the consent of HUD under 24 CFR section 207.14(a), as in effect at the time the mortgage was endorsed by HUD for insurance in 1977, and that said mortgage is therefore not subject to the requirements of Section 250(a) of the NHA, that the language restricting

the prepayment of the HUD Mortgage Note is void *ab initio* and of no force or effect and in any event does not require the consent of HUD to a prepayment in full of the HUD Mortgage Note, and (iii) that the HUD Mortgage Note may be prepaid in full without the consent of HUD.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Permanent Injunction)

57.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 above as if fully set forth herein.

58.    By virtue of the foregoing, Plaintiffs are entitled to an injunction enjoining HUD from placing any restrictions on the prepayment of the HUD Mortgage Note other than those contained in 24 CFR Section 207.14(a), as in effect at the time the HUD Mortgage was endorsed for insurance by HUD in 1977.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Mandamus)

59.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 58 above as if fully set forth herein.

60.    Plaintiffs have a clear right to prepay the HUD Mortgage Note upon giving the thirty (30) days' notice required by 24 CFR Section 207.14(a), as in effect in 1977.

61.    Because, under 24 CFR Section 207.14(a), the consent of HUD is not required in order for Plaintiffs to prepay the HUD Mortgage Note, Section 250(a) of the NHA is inapplicable to the prepayment of the HUD Mortgage.

62.    HUD is under a duty to follow the regulations that were in effect at the time the HUD Mortgage was endorsed for insurance by HUD, and as such has a duty to permit Plaintiffs to prepay the HUD Mortgage Note as requested.

63.    Plaintiffs have no other adequate remedy.

64.    By virtue of the foregoing, Plaintiff is entitled to an order in the nature of mandamus compelling Defendants to take any and all action required to withdraw and affirmatively countermand their prior rejection of Plaintiffs' notice of intent to prepay the HUD Mortgage Note and to permit the prepayment of the HUD Mortgage Note subject only to the requirement that Plaintiffs provide the thirty (30) days' notice required by Section 207.14(a) of the NHA, as in effect in 1977 (together with the required "Wellstone Notice" pursuant to Section 219 of the Department of Veterans Affairs, Housing and Urban Development and Independent Agencies Appropriation Act of 1999).

WHEREFORE Plaintiffs demand judgment as follows:

A. A declaratory judgment declaring (i) that the Defendants' refusal to permit Plaintiffs to prepay the HUD Mortgage Note is arbitrary and capricious, contrary to law, unsupported by substantial evidence and wrong on the facts, (ii) that the prepayment of the HUD Mortgage Note is permissible under 24 CFR Section 207.14(a) and therefore said mortgage is not subject to the requirements of Section 250(a) of the NHA, that the language restricting the prepayment of the HUD Mortgage Note is void *ab initio* and of no force or effect, and in any event does not require the consent of HUD to a prepayment

in full of the HUD Mortgage Note, and (iii) that the HUD Mortgage Note may be prepaid in full without the consent of HUD.

B. A mandatory permanent injunction enjoining Defendants from placing any restrictions on the prepayment of the HUD Mortgage Note other than those contained in 24 CFR Section 207.14(a), as in effect at the time the HUD Mortgage was endorsed for insurance by HUD in 1977;

C. An order in the form of mandamus compelling Defendants to take any and all action required to withdraw and affirmatively countermand their prior rejection of Plaintiffs' notice of intent to prepay the HUD Mortgage Note and to permit the prepayment of the HUD Mortgage Note subject only to the requirement that Plaintiffs provide the thirty (30) days' notice required by 24 CFR Section 207.14(a), as in effect in 1977 (together with the required "Wellstone Notice" pursuant to Section 219 of the Department of Veterans Affairs, Housing and Urban Development and Independent Agencies Appropriation Act of 1999) ;

D. Costs and disbursements of this action, including reasonable attorneys' fees; and

E. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 1st day of February, 2008.

Robert W. Piatt III (D.C. Bar No. 502513)
BINGHAM McCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202) 373-6001
*Attorney for Plaintiffs*


OF COUNSEL TO PLAINTIFFS:

MEISTER SEELIG & FEIN LLP
Two Grand Central Tower
140 East 45th Street
19th Floor
New York, New York 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3535

FHA FORM NO. 4157-A
(CORPORATE)
Revised March 1965

# MORTGAGE NOTE

$17,629,100.00

New York , New York

October 13 , 1977

FOR VALUE RECEIVED, the undersigned, St. Marks Place Housing Company, Inc. promises to pay to New York State Housing Finance Agency, a public benefit -a corporation organized and existing under the laws of New York or order, hereinafter designated as the Mortgagee, the principal sum of seventeen million, six hundred twenty-nine thousand, one hundred ----- Dollars ($ 17,629,100.00                ) with interest from date at the rate of eight and onehalf per centum ( 8.5 %) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows:

> See "Attachment A", Paragraph 1
> incorporated herein by reference
> and made a part hereof

Both principal and interest under this Note, as well as the additional payments set forth in the Mortgage of even date herewith securing this Note, shall be payable at the office of New York State Housing Finance Agency at     in 1250 Broadway, New York, New York  10001 or such other place as the holder may designate in writing.

Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.  See "Attachment A", Paragraph 2 incorporated herein by reference and made a part hereof.

Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.

The whole of the principal sum or any part thereof, and of any other sums of money secured by the Mortgage given to secure this Note, shall, forthwith, or thereafter, at the option of the Mortgagee, become due and payable if default be made in the payment of any installment under this Note; and if such default is not made good prior to the due date of the next such installment or upon the happening of any default which, by the terms of the Mortgage given to secure this Note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable; all the covenants, agreements, terms, and conditions of said Mortgage ~~and of the Building loan Agreement incorporated in the Mortgage (which covenants, agreements terms and conditions inconsistent with the terms of this determination set Mortgage)~~ are hereby incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Note; and the undersigned hereby covenants to perform all such covenants and agreements. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.  In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

**Subject to the prior approval of the Secretary of Housing and Urban Development

No default shall exist by ...on of nonpayment of any required i... ...ment of principal so long as the amount of optional additi... . prepayments of principal already m...e pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor, or endorser, hereby waive present-ment for payment, demand, protest, notice of protest, and notice of dishonor.

See Attachment "A", Paragraph 3
Signed and sealed the day and year first above written.

ST. MARKS PLACE HOUSING COMPANY, INC.

ATTEST: _____    BY _____

THIS IS TO CERTIFY that this is the Note described in, and secured by, Mortgage of even date herewith, and in the same principal amount as herein stated, on property located at 165-185 St Marks Place                              , in the City of New York, Borough of Richmond                              , County of  Richmond
State of New York.

_____
Notary Public

FHC... ..:..158
Notary Public, ... ? :f New York
No. 41-3622500D.
Qualified in Queens County
Commission Expires March 40, 12 79

Pay to the Order of Metropolitan
Savings Bank            without recourse
this 13 day of October ,1977

NEW YORK STATE HOUSING FINANCE AGENCY

BY _____
    Assistant Director

STATE OF NEW YORK

Loan No. 012-11024 HFC-COM-X

**Mortgage Note**

ST. MARKS PLACE HOUSING COMPANY, INC.
TO
NEW YORK STATE HOUSING FINANCE AGENCY

No. 012-11024
pursuant to 223(f)
Insured under § 207 of the National
Housing Act and Regulations thereunder of
the Federal Housing Commissioner

In effect on December 20, 1976

To the extent of advances approved by the
Commissioner

FEDERAL HOUSING COMMISSIONER

By _____
        (Authorized Agent)

Date _____

$17,629,100.00
A total sum of $/      has been approved
for insurance thereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By _____
        (Authorized Agent)

Date  October 13, 1977

Reference is made to the Act and to the
Regulations thereunder covering assignments
of the insurance protection on this note.
164103-P Rev. 3/68                    HUD-Wash, D. C.

ATTACHMENT A

Attached to and being a part of the Mortgage Note executed by
St. Marks Place Housing Company, Inc.,
                                    (Mortgagor) dated
October , 13    1977 , to New York State Housing
Finance Agency  in the principal sum of seventeen million, six
hundred twenty-nine thousand, one hundred and no/100 ($17,629,100.00)
dollars.

Paragraph 1

Interest only payable from the date hereof on the first day of
November        , 1977.  Commencing on the first day of
December       , 1977, installments of interest and principal
shall be paid in the sum of one hundred twenty-nine thousand, two
hundred thirty-seven and 90/100 --------------------------Dollars
($129,237.90        ), such payments to continue thereafter monthly
on the first day of each succeeding month until the entire indebt-
edness has been paid.  In any event the balance of the principal,
if any, remaining unpaid, plus accrued interest, if any, shall be
due and payable on November 1, 2017        -  The installments
of interest and principal shall be applied first to the interest
at the rate of eight and one-half per centum (8 1/2%) per annum
upon the principal sum or so much thereof as shall from time to
time remain unpaid, and the balance thereof shall be applied
on account of principal.  In the event the maker hereof shall
fail to make any monthly payment due to the holder hereof
within fifteen (15) days after the due date thereof the holder
hereof may, at its option, impose a late charge, in addition to
any other sums due and payable upon the maker hereof of Two Cents
($.02) for each One Dollar ($1.00) of interest and/or principal
which is more than fifteen days in arrears.

The maker hereof assumes no personal liability for the payment
of the principal of or the interest on this Note except as set
out in the Mortgage securing this Note.

PROVIDED, if mortgagor fails to achieve certain rental increases in
the property by   April 13 , 1979        and a prepayment is
made on the outstanding principal balance of the debt in an amount
to be determined by the Secretary of Housing and Urban Development,
(which amount shall in no event exceed the sum of $2,557,700.00 );
then the monthly payment of principal and interest shall be adjusted
to equal an amount determined by

    (1)  Subtracting from the original principal debt of
         $17,629,100.00   :

         (a)  The amount of any payments to principal; and

         (b)  The amount of the prepayment; and

    (2)  Multiplying the amount remaining after completion of (1)
         above by a factor to be determined by the Secretary of
         Housing and Urban Development which will amortize the then
         remaining principal balance of the debt over the remainder
         of the original term of the Loan.

The revised monthly payment of principal and interest shall be effective
the first day of the first month following the month in which the pre-
payment is made.

AND FURTHER PROVIDED, the maturity date, the rate of interest and other
terms of this Mortgage Note shall not be altered or adjusted by reason
of the prepayment.

Paragraph 2

Provided, that additional prepayment (beyond such 15% of such original sum in any one calendar year) may be made on any interest payment date upon 30 days' prior written notice to the holder hereof; And Provided Further, That, in the event of prepayment of principal during any one calendar year in any amount in excess of fifteen percent (15%) of the original principal amount of the Note, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder hereof for its own account a penalty or charge equal to three percent (3%) of the amount of such excess less 1/8 of 1 percent for each 12 month period which has elapsed since the date of this Note; Provided, however, no additional charge shall be collected by the holder hereof for any partial prepayment of principal which is made by the maker or on its behalf pursuant to a requirement of the Federal Housing Commissioner.

Paragraph 3

This Mortgage Note is evidence of a portion of an indebtedness in an original and prior note in the amount of $20,990,000.00 dated        *        which prior note was modified, recast and divided into this senior note, in the amount of $ 17,629,100.00          (insured by the Secretary), and a junior note (of even date herewith), in the amount of $ 3,360,900.00        .    The recasting and division into the senior and junior indebtedness was accomplished pursuant to a certain Modification and Severance Agreement of even date herewith.

* Three Notes dated 1/30/74 ($19,715,000), 6/11/76 ($975,000) 10/13/77 ($300,000) respectively.

WITNESS:

ST. MARKS PLACE HOUSING COMPANY INC.

By:

By:

C 08 —193
RBW

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

CLERK
US DISTRICT & BANKRUPTCY

## I (a) PLAINTIFFS

St. Marks Place Housing Company, Inc.; St. Marks Place Associates; Stellar CP LP; and Castleton GP LLC

## DEFENDANTS

United States Department of Housing and Urban Development; and Alphonso Jackson, as Secretary of the United States Department of Housing and Urban Development

2008 FEB -1 PI 6: 58

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Queens, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

88868

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

RECEIVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David J. Butler, Esq.; Bingham McCutchen LLP; 2020 K Street, N.W., Washington, DC 20006; (202) 373-6000 (Of Counsel: Stephen B. Meister, Esq.; Meister Seelig & Fein LLP; 2 Grand Central Tower; 140 East 45th Street, 19th Floor; New York, NY 10017; (212) 655-3500)

ATTOR

Case: 1:08-cv-00193
Assigned To : Walton, Reggie B.
Assign. Date : 2/1/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

④

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights<br>Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-<br>Employment<br>☐ **446** Americans w/Disabilities-<br>Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of<br>Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. 1361, inter alia; Seeking declaratory judgment, mandamus, and injunctive relief affirming right to prepay mortgage debt without HUD consent.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** 0.00    Check YES only if demanded in complaint
**JURY DEMAND:**    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE February 1, 2008    SIGNATURE OF ATTORNEY OF RECORD    *Robert Wm Piatt 44*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.