## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ALPHONSO JACKSON, AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 451 7th Street SW Washington, DC 20410<br><br>　　　　Defendants. | Case No. 1:08-cv-00193 (RBW) |

### DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(6), defendants hereby move the Court to dismiss plaintiffs' Complaint with prejudice, for the reasons set forth in the accompanying Memorandum of points and authorities in support of this motion.

Dated: April 4, 2008

Respectfully submitted,
JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney

/s/ Kathryn L. Wyer
MICHAEL SITCOV
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., NW
Washington, D.C. 20530
Telephone: (202) 616-8475 / Fax: (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC,       Plaintiffs,     v. UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ALPHONSO JACKSON, AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 451 7th Street SW Washington, DC 20410       Defendants. | Case No. 1:08-cv-00193 (RBW) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATUTORY AND REGULATORY FRAMEWORK ..................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 6

      1.    New York's Mitchell-Lama program ................................................................. 6

      2.    Castleton Park Apartments Development And St. Marks Mortgage ................ 7

      3.    Events Leading Up To This Litigation .............................................................. 8

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT .................................................................................................................. 11

      I.    JUDICIAL REVIEW OF PLAINTIFFS' CLAIM IS GOVERNED BY
           THE APA ................................................................................................. 11

      II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE APA .......................... 13

           A.    The Plain Language Of The Mortgage Note Conditions The Privilege
                 Of Prepayment On Secretary Approval ...................................................... 13

           B.    The 1977 HUD Regulation Does Not Render The Mortgage Note
                 Footnote Invalid .......................................................................................... 15

           C.    The Secretary's Interpretation Of 24 C.F.R. § 207.14(a) (1977) Is
                 Entitled To Substantial Deference, And His Decision To Apply
                 Section 250 Based On The Mortgage Note Footnote Was
                 Reasonable .................................................................................................. 18

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758 (D.C. Cir. 1980) ...........................11

Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 101 S. Ct. 188 (1980) ......................................11

Assoc. Builders & Contractors, Inc.. v. Herman, 166 F.3d 1248 (D.C. Cir. 1999) ......................12

Atwood-Leisman v. United States, 72 Fed. Cl. 142 (2006) ............................................................ 4

*Auer v. Robbins, 519 U.S. 452, 117 S. Ct. 905 (1997) ......................................................18, 19

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................10

Chancellor Manor, Ltd. v. United States, 331 F.3d 891 (Fed. Cir. 2003) ......................................5

Chevron[, U.S.A., Inc. v. Natural Res. Defense Council, 467 U.S. 837, 104 S. Ct. 2778 (1984)...18

*Cienega Gardens v. United States, 503 F.3d 1266 (Fed. Cir. 2007) ...................................2, 6, 20

Columbus Park Corp. v. Dep't of Hous. Pres. & Dev., 598 N.E.2d 702 (N.Y. 1992) ...............6, 7

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) ...............................10

Fornaro v. James, 416 F.3d 63 (D.C. Cir. 2005) ..........................................................................11

KSLM-Columbus Apartments, Inc. v. N.Y. State Div. of Hous. & Cmty. Renewal,
    772 N.Y.S.2d 665 (N.Y. App. Div. 2004) ......................................................................6, 7

*Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007) .............................................18

Mistick PBT v. Chao, 440 F.3d 503 (D.C. Cir. 2006) ..................................................................18

PDK Labs Inc. v. Reno, 134 F. Supp. 2d 24 (D.D.C. 2001) ...................................................11, 12

Rivers Unltd. v. U.S. Dep't of Transp., 533 F. Supp.2d 1 (D.D.C. 2008) ....................................18

Rogers v. Johnson-Norman, 466 F. Supp. 2d 162 (D.D.C. 2006) ............................................ 9, 10

Safe Extensions, Inc. v. FAA, 509 F.3d 593 (D.C. Cir. 2007) ................................................12, 13

Shirk v. Garrow, 505 F. Supp. 2d 169 (D.D.C. 2007) .............................................................10, 11

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S. Ct. 876 (1950) .................................11

Thetford Props. IV Ltd. P'ship v. HUD, 907 F.2d 445 (4th Cir. 1990) ........................................6

Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006) ........................................................................12

United States v. Instruments, S.A., Inc., 807 F. Supp. 811 (D.D.C. 1992) ...................................11

United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S. Ct. 502 (1931) ..........................11

*Wisconsin v. City of New York, 517 U.S. 1, 116 S. Ct. 1091 (1996) ........................................19

Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43 (D.C. Cir. 1999) .................................18

## STATUTES

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ...........................................................1

5 U.S.C. § 704 .............................................................................................................................. 12

National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq. ............................................................2

NHA Section 207, 12 U.S.C. § 1713 .........................................................................................3, 7

NHA Sections 221(d)(3), 12 U.S.C. § 1715l ...............................................................................2

12 U.S.C. § 1715b ........................................................................................................................3

NHA Section 223, 12 U.S.C. § 1715n .......................................................................................3, 8

NHA Section 236, 12 U.S.C. § 1715z-1 .....................................................................................2, 7

12 U.S.C. § 1715z-15 .............................................................................................................5, 13, 18

Mandamus Act, 28 U.S.C. § 1361 .............................................................................................11

Declaratory Judgment Act, 28 U.S.C. § 2201 ...........................................................................11

Pub. L. 98-181, § 433, 97 Stat. 1221 .........................................................................................5

Emergency Low-Income Housing Preservation Act of 1987,
    Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA") ...................................................5

Low-Income Housing Preservation and Resident Homeownership Act of 1990,
    Pub. L. No. 101-625, 104 Stat. 4249 (1990) ("LIHPRHA") ...............................................5

N.Y. Priv. Hous. Fin. Law §§ 10-37 ...........................................................................................6

N.Y. Priv. Hous. Fin. Law § 35 ...........................................................................................7, 8-9

## REGULATIONS

24 C.F.R. § 200.87 ...................................................................................................................4, 16

24 C.F.R. Ch. II, Subch. B (§§ 201.1 et seq.) ..............................................................................3

24 C.F.R. §§ 207.1 -.499 ..............................................................................................................3

24 C.F.R. § 207.14 (1977) ........................................................................................... 4, 15, 17, 19

24 C.F.R. § 207.253 (1977) ...........................................................................................................4

24 C.F.R. § 207.499 (1977) ...........................................................................................................4

24 C.F.R. § 221.524 (1977) .........................................................................................................16

24 C.F.R. § 236.30 .........................................................................................................................4

## ADMINISTRATIVE MATERIALS

HUD, Final Rule, 36 Fed. Reg. 24537 (Dec. 22, 1971) ..........................................................4, 15

HUD, Final Rule, 51 Fed. Reg. 2358 (Mar. 4, 1986) ...................................................................17

HUD, Final Rule, 61 Fed. Reg. 14396 (Apr. 1, 1996) ........................................................ 3, 4, 17

HUD, Legal Op. CIM-0111 (May 1, 1995) ..................................................................................16

## PRELIMINARY STATEMENT

In this case, the owners of a New York multifamily affordable rental housing project bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, seeking to prevent the Department of Housing and Urban Development ("HUD") and its Secretary ("Secretary") (collectively, "defendants") from enforcing mortgage prepayment requirements set forth in Section 250 of the National Housing Act and aimed at preserving a critical mass of affordable housing in a given area.  Instead, the owners assert an unconditional right to prepay their HUD-insured mortgage, issued in 1977 by the New York State Housing Finance Authority ("NYSHFA"), and thus to exit from New York's Mitchell-Lama affordable housing program. They base this asserted right on the contention that Section 250 does not apply to their mortgage at all.  Generally, Section 250 restricts the Secretary's ability to approve prepayment of mortgages where the Secretary's approval is already required in order for prepayment to occur. Here, the Secretary determined that Section 250 does apply to the mortgage in question because a footnote in the Mortgage Note states that prepayment is subject to the Secretary's approval.

The meaning and validity of this Mortgage Note footnote are the only issues presented in this case.  Plaintiffs argue that the footnote does not actually mean what it says in light of an attachment to the Mortgage Note.  However, that attachment merely sets forth the specific monetary amounts involved in interest and principal payments and imposes a penalty for prepayment in some circumstances.  The attachment has nothing to do with, and is not in conflict with, the footnote requiring the Secretary's approval before prepayment may occur.

Plaintiffs also assert that this Court should hold the footnote void in light of a HUD regulation in effect in 1977, at the time the Note was signed.  This suggestion is misplaced.  The

- 1 -

HUD regulation in question required mortgagors (owners/borrowers) and mortgagees (lenders) to include a provision in their mortgage agreements that allows the mortgagor to prepay the mortgage. The purpose of this "prepayment privilege" was to induce greater participation by property owners in affordable housing programs by offering them low-cost mortgage insurance while also ensuring that certain conditions were imposed on the housing development. The regulation does not, however, expressly mandate that prepayment be allowed without the Secretary's approval. It is thus perfectly consistent with a requirement, voluntarily included by the owners and NYSHFA as the parties to the mortgage agreement, that the Secretary's approval be obtained. Because the Mortgage Note at issue here does contain such a requirement, the Secretary's determination that Section 250 applies here should be upheld.

## STATUTORY AND REGULATORY FRAMEWORK

As part of HUD's mission to increase access to affordable housing, the Secretary is charged with implementing a number of different programs established by Congress in the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq., that provide incentives to property developers to create and maintain housing accessible to low- and moderate-income families and individuals. A number of these programs involve three-party arrangements between a property owner; a lender, which provides the mortgage; and HUD, which provides mortgage insurance. See, e.g., Cienega Gardens v. United States, 503 F.3d 1266, 1270-71 (Fed. Cir. 2007) (describing such an arrangement pursuant to NHA Sections 221(d)(3) and 236, 12 U.S.C. §§ 1715l & 1715z-1). The NHA grants the Secretary authority to implement its provisions by promulgating rules

and regulations. 12 U.S.C. § 1715b.[1]

The relevant program here is aimed at providing multifamily rental housing.  NHA
Section 207, 12 U.S.C. § 1713, authorizes the Secretary to provide mortgage insurance as a
means of addressing the need for affordable rental housing,  particularly for families.  See id. §
1713(b) ("The insurance of mortgages under this section is intended to facilitate particularly the
production of rental accommodations, at reasonable rents, of design and size suitable for family
living.").  Section 223, id. § 1715n, further authorizes the Secretary, "in his discretion, to insure .
. . a mortgage executed in connection with the . . . refinancing of an existing multifamily housing
project."  Id. § 1715n(f).  Borrowers whose mortgages are insured through these provisions must
agree to various restrictions as to rents, charges, capital structure, rate of return, and methods of
operation, either through a Regulatory Agreement between the borrower and HUD, id. §
1713(b)(2), or through the operation of some other federal or state law, id. § 1713(b)(1).[2]

The regulations promulgated by the Secretary relating to multifamily rental housing
mortgage insurance are located at 24 C.F.R. §§ 207.1 -.499.  The version of the regulations in
effect in 1977, when the mortgage note at issue in this case was signed, provided that "[t]he
mortgage shall contain a provision permitting the mortgagor to prepay the mortgage in whole or

_____

[1]HUD has promulgated regulations implementing each of these programs.  See 24 C.F.R.
Ch. II, Subch. B (§§ 201.1 et seq.).  Before 1996, the regulations for each program were entirely
separate and, while containing many similarities, were not identical.  As explained below, the
differences are significant here in connection with prepayment privileges.  In 1996, the
regulations were streamlined and consolidated to some extent.  See generally HUD, Final Rule,
61 Fed. Reg. 14396 (Apr. 1, 1996).

[2]A mortgage for multifamily rental property that is insured pursuant to Section 223 is
endorsed under Section 207.  See id. § 1715n(f)(1) (providing authorization to insure mortgages
for multifamily housing projects "under any section of this subchapter").

- 3 -

in part upon any interest payment date after giving to the mortgagee 30 days' notice in writing in advance of its intention to so prepay." HUD, Final Rule, 36 Fed. Reg. 24537, 24540 (Dec. 22, 1971) (24 C.F.R. § 207.14(a)).[3] The insurance contract "shall terminate effective as of the date of the prepayment." Id. at 24517 (24 C.F.R. § 207.253(a)(2)). The purpose of this "prepayment privilege" was to provide an additional incentive to private property owners to agree to the rent and use restrictions that accompany the mortgage insurance. Cf. Chancellor Manor, Ltd. v. United States, 331 F.3d 891, 894 (Fed. Cir. 2003) (discussing a prepayment privilege set forth in a different regulation, 24 C.F.R. § 236.30(a)(1))[4]; Atwood-Leisman v. United States, 72 Fed. Cl. 142, 144 (2006) (recognizing that the prepayment option in mortgage contracts between property owners and Farmers Home Administration "served as a major inducement for recruiting property owners into the program" (internal quotation omitted)). The regulations in effect at that time also provided, as they still do, that they "may be amended . . . at any time and from time to time, in whole or in part, but such amendment shall not adversely affect the interests of a mortgagee or lender under the contract of insurance on any mortgage or loan already insured." 36 Fed. Reg. at 24551 (24 C.F.R. § 207.499). The interests of mortgagors or borrowers are not addressed in the amendment provision.

---

[3]As part of the streamlining process mentioned above, this regulation was removed in 1996, and a provision generally applicable to all HUD mortgage insurance programs was promulgated in its place. 61 Fed. Reg. at 14396. The new provision expressly states that the prepayment privilege does not restrict the authority of the Federal Housing Commissioner, to whom the Secretary has delegated the responsibility to administer these programs, to impose limitations on prepayment. 24 C.F.R. § 200.87(a).

[4]Unlike the regulation at issue here, the version of 24 C.F.R. § 236.30(a)(1) in effect at the relevant time in Chancellor Manor expressly allowed prepayment after twenty years "without prior consent of HUD."

In 1983, Congress added Section 250 to the NHA, limiting prepayment of mortgages on multifamily housing in instances where prepayment was already subject to the Secretary's approval. See Pub. L. 98-181, § 433, 97 Stat. 1221 (codified as amended at 12 U.S.C. § 1715z-15). Specifically, Section 250, as amended, states:

> During any period in which an owner of a multifamily rental housing project is required to obtain the approval of the Secretary for prepayment of the mortgage, the Secretary shall not accept an offer to prepay the mortgage on such project . . . unless–
>
> (1) the Secretary has determined that such project is no longer meeting a need for rental housing for lower income families in the area;
>
> (2) the Secretary (A) has determined that the tenants have been notified of the owner's request for approval of a prepayment; (B) has provided the tenants with an opportunity to comment on the owner's request; and (C) has taken such comments into consideration; and
>
> (3) the Secretary has ensured that there is a plan for providing relocation assistance for adequate, comparable housing for any lower income tenant who will be displaced as a result of the prepayment and withdrawal of the project from the program.

12 U.S.C. § 1715z-15(a).[5]

This provision was an early manifestation of Congress' rising concern that the withdrawal of properties from the low- and middle-income housing market due to prepayment was causing a significant shortage of available affordable housing. That concern led Congress subsequently to enact the Emergency Low-Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), which placed a two-year moratorium on mortgage prepayments, and the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, 104 Stat. 4249 (1990) ("LIHPRHA"), which required HUD approval in all cases before prepayment was allowed and imposed a notification requirement on owners wishing to

---

[5]The relevant portions of this section have not been changed since its enactment in 1983. See Pub. L. No. 98-181, § 433, 97 Stat. 1221 (Nov. 30, 1983).

prepay.  This uniform requirement was removed in 1996.  Cf. Cienega Gardens, 503 F.3d at

1272-74 (discussing these legislative developments).  However, Section 250, which only applies

where approval is already necessary, remains in effect.[6]

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.**    **New York's Mitchell-Lama program**

        This case involves an affordable housing project that was developed as part of New

York's Mitchell-Lama program.  Compl. ¶ 10.  Article II of the New York Private Housing

Finance Law ("PHFL"), N.Y. Priv. Hous. Fin. Law §§ 10-37, commonly referred to as the

"Mitchell-Lama Law," "was enacted in 1955 in order to encourage the development of low- and

middle-income housing in blighted areas by offering State and municipal assistance to developers

in the form of" loans, tax exemptions, and other financial incentives.  KSLM-Columbus

Apartments, Inc. v. N.Y. State Div. of Hous. & Cmty. Renewal, 772 N.Y.S.2d 665, 667 (N.Y.

App. Div. 2004) (citing N.Y. Priv. Hous. Fin. Law §§ 11, 20-23, 28, 31, 33); see also Columbus

Park Corp. v. Dep't of Hous. Pres. & Dev., 598 N.E.2d 702, 703-04 (N.Y. 1992). Originally,

limited profit housing corporations which were organized pursuant to the Mitchell-Lama Law

and which developed and maintained an affordable rental property with financial assistance

obtained through this program were required to maintain the property in the program for a

_____

        [6]The changes regarding HUD approval requirements for prepayment led to litigation, in
which owners formerly not required to seek HUD approval claimed that imposing the approval
requirement by statute constituted a breach of contract or regulatory taking.  See, e.g., Cienega
Gardens, 503 F.3d at 1274; Thetford Props. IV Ltd. P'ship v. HUD, 907 F.2d 445, 446 (4th Cir.
1990) (addressing situation where "the mortgages themselves[] expressly allowed the owners of
the properties, without HUD's prior consent, to prepay their mortgages at the end of 20 years").
However, that line of cases is not relevant to the issue presented in this case, where the
Secretarial approval requirement is in the Mortgage Note itself, not subsequently imposed by
statute or regulation.

minimum of 35 years.  KSLM-Columbus Apartments, Inc., 772 N.Y.S.2d at 667  However,

because the 35-year prohibition proved to be "a major deterrent to private developers who might

otherwise enter the Mitchell-Lama program," a 1960 amendment reduced the required number of

years to 20.  Id.; see N.Y. Priv. Hous. Fin. Law. § 35(2) (providing that limited profit housing

corporations that developed their properties with loans made after May 1, 1959, may dissolve,

and thus withdraw their property from the program, "not less than twenty years after the

occupancy date upon the payment in full of the remaining balance of principal and interest due

and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting

such voluntary dissolution").  The New York Court of Appeals has held that the terms of the

original financing contract between a limited profit housing company and the state housing

division may serve to extend this 20-year statutory period.  Columbus Park Corp., 598 N.E.2d at

707.

**2.    Castleton Park Apartments Development And St. Marks Mortgage**

Plaintiff St. Marks Place Housing Company, Inc. ("St. Marks") was organized pursuant to

the Mitchell-Lama law.  Compl. ¶ 10.  In 1974, St. Marks obtained a noninsured mortgage loan

from NYSHFA for the development of what became the Castleton Park Apartments, an

affordable housing project located in Staten Island, New York.  Compl. ¶¶ 4, 16.  This loan, of

approximately $20 million, was subsidized by HUD under Section 236 of the NHA, 12 U.S.C. §

1715z-1.  Compl. ¶¶ 16-17.

In 1977, the St. Marks loan was refinanced, and at the same time was divided into two

parts.  Compl. ¶¶ 18-19.  The first part consists of a senior mortgage loan, in an original amount

of $17,629,100, insured by HUD under NHA Section 207, 12 U.S.C. § 1713(b), pursuant to

NHA Section 223(f), 12 U.S.C. § 1715n(f).  Compl. ¶ 19.  The terms of payment for this loan are

set forth in a mortgage note ("Mortgage Note").  As indicated in Attachment A to the Mortgage

Note, the loan is set to mature on November 1, 2017.  Compl. ex. A attach. A.  Prior to maturity,

the mortgage note states, "[p]rivilege is reserved to pay the debt in whole or in an amount equal

to one or more monthly payments on principal next due, on the first day of any month prior to

maturity upon at least thirty (30) days' prior written notice to the holder."  Compl. ¶ 20.  This

sentence is followed by two asterisks, inserting a footnote stating: "Subject to the prior approval

of the Secretary of Housing and Urban Development."  Compl. ¶ 21.  The Mortgage Note is

signed by representatives of St. Marks and NYSHFA, and is dated October 13, 1977.  Compl. ex.

A.

     The second part of the refinanced loan consists of a noninsured subordinate mortgage

loan in the amount of $3,360,900.  Compl. ¶ 19.  This loan may not be prepaid without HUD

consent unless the senior mortgage has been paid or is no longer held or insured by HUD.

Compl. ¶ 19 n.1.

**3.**     **Events Leading Up To This Litigation**

     In May 2006, St. Marks, together with plaintiff St. Marks Associates, a New York limited

partnership that is the beneficial owner of Castleton Park Apartments, entered into an agreement

to sell the beneficial interest in the project, together with all outstanding St. Marks stock, to

plaintiffs Stellar CP LP and Stellar Castleton GP LLC.  Compl. ¶¶ 5, 11.  On June 28, 2006, St.

Marks indicated its intent to dissolve itself as a Mitchell-Lama housing company and withdraw

from the Mitchell-Lama program by filing a Notice of Intent to Dissolve with the New York

State Division of Housing and Community Renewal ("NYSDHCR").  Compl. ¶ 14.  Under N.Y.

Priv. Hous. Fin. Law. § 35(2), any such dissolution cannot take place until St. Marks' senior and subordinate mortgages are paid in full.

By letter, the most recent of which was dated November 30, 2007, St. Marks notified HUD of their intent to prepay the senior mortgage. Compl. ¶ 32. St. Marks also presented to HUD their argument, in April and again in September 2007, that, despite the footnote requiring the HUD Secretary's approval as a condition of prepayment, NHA Section 250 did not apply to the Mortgage Note. Compl. ¶¶ 33, 35. In November 2007, St. Marks also asked Capmark Finance, Inc. ("Capmark"), which is currently the holder of the Mortgage Note, to submit form HUD-9807, Insurance Termination Request for Multifamily Mortgages. Compl. ¶ 38.

HUD responded to St. Marks' November 30, 2007, letter by letter dated December 20, 2007. HUD stated that, based on the prepayment restriction in the Mortgage Note that requires the Secretary's approval prior to prepayment, "prepayment of this mortgage is subject to Section 250 of the National Housing Act." HUD, Letter of Dec. 20, 2007 (attached to this memorandum as exhibit A).[7] HUD further stated that its approval of prepayment for mortgages subject to Section 250 was dependent upon mortgagors' compliance with Section 250 requirements. Id. HUD then indicated that it was denying St Marks' November 30, 2007, request to prepay because St. Marks had not met the Section 250 requirements. Id. As stated in the letter, these requirements are (1) that St. Marks provide Castleton Park residents with a 150-day notice; (2) that St. Marks either provide $15,000 per unit in repairs or rehabilitation or replace two or more

---

[7]As the December 20, 2007, letter is the HUD decision that plaintiffs seek to set aside, and is described by plaintiffs in their Complaint, ¶¶ 39, 41, it is "incorporated in the complaint," and the Court may therefore consider the letter without converting defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment. Rogers v. Johnson-Norman, 466 F. Supp. 2d 162, 165 n.3 (D.D.C. 2006) (internal quotation omitted).

- 9 -

major building components, and have the funds for this purpose in escrow by the time of

prepayment approval; and (3) that St. Marks execute a rental use agreement, to be recorded in

first lien position on the property until the mortgage's maturity date of November 1, 2017, which

would include the same terms and conditions that are currently set forth in the Regulatory

Agreement between St. Marks and HUD.  Id.  Following receipt of the December 20, 2007, letter

from HUD, plaintiffs filed the instant suit on February 1, 2008.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), the court's decision whether to dismiss for failure to state

a claim upon which relief may be granted is based on "the legal sufficiency of the complaint."

Shirk v. Garrow, 505 F. Supp. 2d 169, 171 (D.D.C. 2007).  While the complaint need not provide

"detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

The alleged facts must "state a claim for relief that is plausible on its face" rather than merely

"conceivable."  Id. at 1974.

In determining whether dismissal is warranted for failure to state a claim, a court may

consider "'the facts alleged in the complaint, any documents either attached to or incorporated in

the complaint and matters of which [the court] may take judicial notice.'"  Rogers, 466 F. Supp.

2d at 165 n.3 (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir.

1997)).  "[T]he court must treat the complaint's factual allegations . . . as true and draw all

reasonable inferences therefrom in the plaintiff's favor," but "the court need not accept as true

inferences unsupported by facts set out in the complaint or legal conclusions cast as factual

allegations." <u>Shirk</u>, 505 F. Supp. 2d at 172.

<b><u>ARGUMENT</u></b>

**I.    JUDICIAL REVIEW OF PLAINTIFFS' CLAIM IS GOVERNED BY THE APA**

Plaintiffs identify three causes of action in their Complaint, which they label as

"Declaratory Judgment," "Permanent Injunction," and "Mandamus."  Compl. ¶¶ 48, 57, 59

(headings).  However, the only cause of action that plaintiffs might bring is one under the APA.

It is well established that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an

independent cause of action.  <u>United States v. Instruments, S.A., Inc.</u>, 807 F. Supp. 811, 814

(D.D.C. 1992) ("[T]he Declaratory Judgment Act does not create a cause of action.") (citing

<u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 672, 70 S. Ct. 876 (1950)).

Furthermore, plaintiffs have no claim under the Mandamus Act, 28 U.S.C. § 1361.

"Mandamus is a 'drastic' remedy, 'to be invoked only in extraordinary circumstances.'"  <u>Fornaro</u>

<u>v. James</u>, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting <u>Allied Chem. Corp. v. Daiflon, Inc.</u>, 449

U.S. 33, 34, 101 S. Ct. 188 (1980)).  "Mandamus is available only if: (1) the plaintiff has a clear

right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy

available to plaintiff."  <u>Id.</u> (internal quotation omitted).  Moreover, "the duty to be performed by

the agency must be 'ministerial and the obligation to act peremptory, and clearly defined. The

law must not only authorize the demanded action, but require it; the duty must be clear and

indisputable.'"  <u>PDK Labs Inc. v. Reno</u>, 134 F. Supp. 2d 24, 34 (D.D.C. 2001) (quoting <u>13th</u>

<u>Regional Corp. v. U.S. Dep't of Interior</u>, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting <u>United</u>

<u>States ex rel. McLennan v. Wilbur</u>, 283 U.S. 414, 420, 51 S. Ct. 502 (1931))).

Here, for the same reasons that will be explained below, the Secretary has no ministerial

- 11 -

duty to allow prepayment of the St. Marks mortgage.  To the contrary, because the St. Marks

Mortgage Note requires the Secretary's approval as a prerequisite to prepayment,  the Secretary

acted in accord with his statutory obligation when he recognized that Section 250 applied here

and then denied prepayment because the Section 250 requirements had not been met.

Even if the Court were to hold that the Mortgage Note does not require the Secretary's

approval, plaintiffs would not have a claim under the Mandamus Act because an adequate

remedy would then be available through the APA.  Cf. PDK Labs Inc., 134 F. Supp. 2d at 34

(recognizing "the mandamus relief sought by plaintiff" as "essentially identical to that which

plaintiff seeks under the APA").  Plaintiffs' three "causes of action" are therefore properly

addressed as a single claim under the APA.

The APA provides a "limited cause of action" for parties who claim to be adversely

affected by agency action. Trudeau v. FTC, 456 F.3d 178, 185 (D.C. Cir. 2006).  Judicial review

under the APA is limited to "'final agency action for which there is no other adequate remedy in

a court.'"  Id. at 183 (quoting 5 U.S.C. § 704).  Under the APA's "familiar and deferential

standard," a court reviews a final agency action "to determine whether [it] w[as] 'arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Safe Extensions,

Inc. v. FAA, 509 F.3d 593, 604 (D.C. Cir. 2007).  When assessing whether the action is "in

accordance with law," a court "must give an agency's interpretation of its own regulation

controlling weight unless it is plainly erroneous or inconsistent with the regulation." Assoc.

Builders & Contractors, Inc.. v. Herman, 166 F.3d 1248, 1254 (D.C. Cir. 1999) (internal

quotation omitted).  Ultimately, the court may set aside the agency's action "only if the agency's

decision is not supported by substantial evidence, or the agency has made a clear error in

- 12 -

judgment." <u>Safe Extensions</u>, 509 F.3d at 604 (internal quotation omitted).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE APA

Thus construed as an APA claim, plaintiffs' challenge focuses on HUD's December 20, 2007 denial of St. Marks' request to prepay the Section 207 mortgage.  Plaintiffs do not contest HUD's conclusion that St. Marks' request must be denied because it did not meet the requirements of Section 250.  Rather, they seek to challenge the Secretary's decision that Section 250 applies to the Mortgage Note in the first place.  They rely for purposes of this challenge on the HUD regulations in effect at the time the Mortgage Note was signed and on the Note's incorporation of an attachment ("Attachment A") that set forth interest payment details.  Based on the plain language of the Mortgage Note, however, Section 250 does apply, and  plaintiffs' contentions to the contrary lack merit.

### A.    The Plain Language Of The Mortgage Note Conditions The Privilege Of Prepayment On Secretary Approval

The prepayment limitations set forth in NHA Section 250 apply to borrowers who are "required to obtain the approval of the Secretary for prepayment of the mortgage."  12 U.S.C. § 1715z-15(a).  This statutory language is clear and unambiguous, and plaintiffs do not suggest otherwise.  The only issue in this case is whether the terms of the Mortgage Note do indeed require St. Marks to obtain the Secretary's approval in order to prepay.  The plain language of the Mortgage Note clearly does impose this requirement.  As described above, the Mortgage Note contains a footnote that states that any prepayment of the mortgage in accord with the terms of the Note is "[s]ubject to the prior approval of the Secretary" of HUD.

Plaintiffs' contention that Attachment A to the Mortgage Note somehow changes the

footnote's meaning is meritless.  The footnote indicator, two asterisks, appears immediately after the sentence in the Mortgage Note that discusses prepayment in general:

> Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. **

The footnote that the two asterisks indicate then adds "Subject to the prior approval of the Secretary of Housing and Urban Development" to the end of that sentence.

The Mortgage Note references Attachment A in two places, but neither of these references suggest that Attachment A in any way limits the condition set forth in the footnote. Attachment A, Paragraph 1 is incorporated by reference after the first paragraph of the Note, filling in the details of how the "principal and interest shall be payable in monthly installments," as stated in the last sentence of the Note's first paragraph.  The Note then references Attachment A, Paragraph 2 after the second sentence of the Note's third paragraph, a full sentence after the footnoted sentence. The second sentence of the Note's third paragraph discusses the obligations of "all parties liable for payment of this debt" to pay "any adjusted premium charge required by the applicable Regulations," in the event the mortgage "is paid in full prior to maturity and while insured under the N[HA]."  Attachment A, Paragraph 2 is specifically relevant to that sentence, as it sets forth a further obligation of "all parties liable for payment" to pay "a penalty or charge equal to three percent (3%) of the amount" of any prepayment in one year that exceeds fifteen percent of the original principal, less an eighth of a percent for each year elapsed since the date of the Note.

Even if the whole of Attachment A were deemed incorporated into the Note, it would have no bearing at all on the meaning of the Secretarial approval requirement in the footnote.

- 14 -

Attachment A provides particular numeric details regarding interest, principal, and penalty payments. It does not address the mortgagor's privilege in general to prepay or the conditions, or lack thereof, that might be imposed on the exercise of that privilege. The footnote can therefore only be read to mean exactly what it says – that St. Marks must obtain the Secretary's approval in order to exercise its privilege to prepay the mortgage.

### B. The 1977 HUD Regulation Does Not Render The Mortgage Note Footnote Invalid

Plaintiffs' only other argument, in the alternative, is that even if the footnote by its terms does require the Secretary's approval (as it plainly does), that requirement is necessarily void by virtue of a HUD regulation in effect at the time the Mortgage Note was signed. The regulation in question, however, is not inconsistent with the requirement in the Note footnote that the Secretary's approval be obtained. The 1977 regulation stated:

> The mortgage shall contain a provision permitting the mortgagor to prepay the mortgage in whole or in part upon any interest payment date after giving to the mortgagee 30 days' notice in writing in advance of its intention to prepay.

36 Fed. Reg. at 24540 (setting forth 1977 version of 24 C.F.R. § 207.14(a)). By setting forth a required term of the mortgage contract between a mortgagor and mortgagee, this regulation established the prepayment obligations between those contracting parties, imposing a thirty-day notice requirement on the mortgagor, but otherwise requiring the mortgagee to accept prepayment. However, the Secretary – who is not a party to the mortgage contract – is not mentioned in this regulation at all. Thus, nothing in the text of this regulation guarantees a mortgagor's right to prepay without having to obtain the Secretary's approval.

The prepayment privilege set forth in 24 C.F.R. § 207.14(a) (1977) was thus significantly

- 15 -

different from the provision governing prepayment in the context of low cost and moderate income mortgage insurance, issued pursuant to NHA Section 221. That provision did not simply require parties to a mortgage contract to insert a particular term in the agreement but affirmatively stated that "[a] mortgage indebtedness may be prepaid in full" in accord with its requirements. 24 C.F.R. § 221.524(a) (1977). Moreover, the privilege for "[p]repayment in full" in that section was divided into privileges "[w]ithout prior [HUD] consent" and "[w]ith prior [HUD] consent." See id. Owners that meet certain requirements that include being of "a limited distribution type" were expressly allowed to prepay without prior HUD consent. Id. § 221.524(a)(1)(ii). On that basis, a 1995 HUD legal opinion concluded that an owner who fit into this category and whose mortgage was insured pursuant to Section 221(d)(3) was not bound by a prepayment prohibition in the Note because the prohibition was "in direct conflict" with 24 C.F.R. § 221.524(a)(1)(ii). HUD, Legal Op. CIM-0111 (May 1, 1995).[8] In this case, on the other hand, because there is no "direct conflict" between the Mortgage Note footnote and the regulation, the Secretary concluded that the footnote remains binding and must be given effect.

The current version of the regulation reinforces this conclusion. As noted above, the current version applies to all HUD mortgage insurance programs and requires the same provision be inserted in the mortgage agreement between the owner and the lender, but expressly states that this prepayment privilege indicated in the regulation may be adjusted "as . . . established by" HUD in any particular case. 24 C.F.R. § 200.87. When the Secretary promulgated this regulation in 1996, he did so without engaging in the regular notice and comment rulemaking

---

[8]HUD legal opinions are publicly available at http://www.hud.gov/offices/adm/hudclips /lops/.

procedures because, he explained, the new rule "merely removes obsolete and unnecessary regulatory provisions, and consolidates repetitive requirements, and does not establish or affect substantive policy." 61 Fed. Reg. at 14397. The version of 24 C.F.R. § 207.14 in effect immediately prior to the promulgation of § 200.87 was the same, as far as is relevant to this case, as the 1977 version.[9] Thus, the 1977 version of § 207.14 must be understood, like the current version of § 200.87, as allowing the prepayment privilege in a particular mortgage agreement to take any form that the parties agree to unless the Secretary objects.[10]

The requirement in the Mortgage Note footnote that prepayment be subject to the Secretary's approval may have been initiated by the Secretary, and the Secretary's actions providing the insurance on the mortgage and entering into a Regulatory Agreement with St. Marks indicate that he had no objection to this requirement. To the extent the footnote was inserted independently of the Secretary, by agreement of the parties to the Mortgage Note, these parties – St. Marks and NYSHFA – adhered to the mutual prepayment rights and obligations set forth in 24 C.F.R. § 207.14(a) (1977) by including the required provision in the mortgage, but they also voluntarily agreed to require approval by the Secretary before prepayment could occur. Nothing in 24 C.F.R. § 207.14(a) (1977) restricted them from making this agreement; the regulation is simply silent on the matter. The regulation therefore provides no basis for deeming

---

[9]The regulation was modified in 1986 to allow the inclusion of prepayment restrictions in mortgage agreements for bond-financed mortgages. HUD, Final Rule, 51 Fed. Reg. 2358, 2358 (Mar. 4, 1986). For such mortgages, prepayment restrictions serve as incentives for investment.

[10]In regard to other prepayment privilege provisions which were also replaced by § 200.87 but which, unlike § 207.14, specified the particular circumstances where the Secretary's approval must or must not be required, the new regulation also did not substantively change the privilege; the Secretary may still determine in a particular case that approval either must or must not be required, and may apply the same categories specified in the former regulation.

that agreed-upon requirement void.

    **C.**    **The Secretary's Interpretation Of 24 C.F.R. § 207.14(a) (1977) Is Entitled To Substantial Deference, And His Decision To Apply Section 250 Based On The Mortgage Note Footnote Was Reasonable**

Even if the 1977 version of § 207.14(a) were deemed ambiguous on its face, the Secretary's decision here clearly indicates that he has interpreted the provision as consistent with the Secretarial approval requirement in the Mortgage Note footnote, and was thus able to conclude that Section 250 applies to St. Marks' proposed prepayment. The Secretary has considerable "power to resolve ambiguities in his own regulations." Auer v. Robbins, 519 U.S. 452, 463, 117 S. Ct. 905 (1997). It is well established that "an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339, 2349 (2007) (internal quotation omitted) (citing Auer, 519 U.S. at 461); accord Mistick PBT v. Chao, 440 F.3d 503, 511 (D.C. Cir. 2006). The deference that must be accorded the agency in this context is recognized as "'more . . . than that afforded under Chevron[, U.S.A., Inc. v. Natural Res. Defense Council, 467 U.S. 837, 845, 104 S. Ct. 2778 (1984)]." Rivers Unltd. v. U.S. Dep't of Transp., 533 F. Supp.2d 1 (D.D.C. 2008) (no pincites available) (quoting Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 52 (D.C. Cir. 1999)).

Here, plaintiffs refer in their Complaint to opinions that the HUD Office of General Counsel allegedly provided to the Secretary, to the effect "that Section 250(a) of the NHA is inapplicable to the prepayment restriction contained in the HUD Mortgage Note." Compl. ¶ 34; see also id. ¶ 36. Even assuming, for purposes of this Motion to Dismiss, that plaintiffs' assertions are true, Section 250(a) vests responsibility for complying with its requirements in the

Secretary.  See 12 U.S.C. § 1715z-15(a) ("[T]he Secretary shall not accept an offer to prepay" unless "the Secretary" makes certain determinations).  The final determination of whether Section 250 applies must therefore be made by the Secretary, not by his Office of General Counsel ("OGC"), and any predecisional opinion expressed by the OGC is irrelevant.  Here, the Secretary's decision shows that he did not ultimately adopt the opinions provided by HUD's Office of General Counsel.  As Congress delegated the authority to implement the NHA to the Secretary, his interpretation is the one that is entitled to deference, regardless of any preliminary views his subordinates may have held.  Wisconsin v. City of New York, 517 U.S. 1, 23, 116 S. Ct. 1091 (1996) (explaining that "the mere fact that the Secretary's decision overruled the views of some of his subordinates is by itself of no moment in any judicial review of his decision").  Here, the Secretary's final decision, expressed in his December 20 letter, that Section 250(a) applied to the Mortgage Note necessarily encompasses the conclusion that the 1977 version of 24 C.F.R. § 207.14(a) did not make Section 250(a) inapplicable.  Indeed, because plaintiffs submitted the same arguments they make here to the Secretary before he made his decision, there is "no reason to suspect that the [Secretary's] interpretation does not reflect the agency's fair and considered judgment on the matter." Auer, 519 U.S. at 462.

      Moreover, the Secretary's interpretation, and his decision to apply Section 250 based on the Mortgage Note footnote, is a reasonable one.  As mentioned, § 207.14(a) differs from some parallel provisions in effect in other HUD programs at the time because it does not expressly state, one way or another, whether the Secretary's approval must or must not be required before prepayment.  It was reasonable for the Secretary to conclude that this regulation was therefore intended to allow the decision whether the Secretary's approval would be required to be made on

a case-by-case basis, depending on the circumstances.

As mentioned above, the function of prepayment privileges in the HUD regulatory scheme is to induce property owners to enter into mortgage agreements that will impose various requirements on them related to providing affordable housing.  It can be presumed that a property owner that is willing to enter into such an agreement even with a clearly stated requirement that prepayment be subject to the Secretary's approval was sufficiently induced by the prepayment privilege as it stood in the agreement.  Such a presumption is in keeping with the Federal Circuit's conclusion that the prepayment privilege appeared a minor benefit in comparison with other incentives in the NHA programs that might induce property owners to develop affordable housing.  See Cienega Gardens, 503 F.3d at 1290 ("The substantial benefits that the owners received, other than the absolute prepayment right, may well have been such that the absolute prepayment right might not have been either the primary or 'but for' reason that a reasonable owner would have invested in the property. Indeed, it is not even clear that a reasonable owner would rely on any aspect of the prepayment right in making the investment, much less that a reasonable owner would rely on an unrestricted right to prepayment.").

Plaintiffs cannot claim to be unfairly prejudiced by the requirement that prepayment be subject to prior Secretary approval when it was in the Mortgage Note that St. Marks signed.  The Secretary therefore had no reason not to give the Mortgage Note full effect, including the requirement of Secretary approval, which in turn triggers Section 250.  The Secretary's determination that Section 250 applies should therefore be upheld.

## CONCLUSION

For the foregoing reasons, the claims raised in plaintiffs' Complaint should be dismissed

- 20 -

in their entirety.


Dated: April 4, 2008                    Respectfully submitted,

                                        JEFFREY S. BUCHOLTZ
                                        Acting Assistant Attorney General
                                        JEFFREY A. TAYLOR
                                        United States Attorney

                                        /s/ Kathryn L. Wyer
                                        MICHAEL SITCOV
                                        KATHRYN L. WYER
                                        U.S. Department of Justice, Civil Division
                                        20 Massachusetts Ave., NW
                                        Washington, D.C.  20530
                                        Telephone: (202) 616-8475 / Fax: (202) 616-8470
                                        kathryn.wyer@usdoj.gov
                                        *Attorneys for Defendants*

**EXHIBIT A**



U.S. Department of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

December 20, 2007

Mr. Jean-Pierre Vaganay
President
St. Marks Housing Company, Inc.
c/o The Jack Parker Corporation
104-20 Queens Blvd, Suite 1-C
Forest Hills, NY 11375

Dear Mr. Vaganay:

Subject:  Project Name: Castleton Park
          Project No.: 012-11024

This is in response to St. Marks Housing Company Inc's letter of November 30, 2007, advising the Department of their intention to prepay the mortgages on Castleton Park Apartments. The first mortgage is a HUD-insured Section 207 mortgage that is subsidized through receipt of Section 236 interest reduction payments. The second mortgage is a Section 236 non-insured mortgage. The second mortgage may not be prepaid prior to the prepayment of the first mortgage.

The note for the first mortgage does contain a prepayment restriction that allows for the prepayment of the mortgage subject to prior approval from the Secretary of Housing and Urban Development. The Department has determined that, based on the restrictions cited above, prepayment of this mortgage is subject to Section 250 of the National Housing Act. The Department's approval for Section 250 prepayments is guided by HUD Notice H-06-11 and further clarified by memorandum dated January 30, 2007. Those requirements are outlined below:

1)  A 150-day notice must be provided to the residents;

2)  The owner must provide a minimum of $15,000 per unit in repairs/rehabilitation or replace two or more major building components. These funds must be escrowed at the time of prepayment approval; and

3)  The owner is required to execute a rental use agreement that will be recorded in first lien position on the property until what would have been the maturity date of the first mortgage, November 1, 2017. The Use Agreement will include the terms and conditions of HUD's current Section 236 Use Agreement.

Therefore, the Department has rejected your November 30, 2007 request to prepay the first mortgage as it does not meet the Section 250 requirements. If you have questions regarding this determination, please contact me at (212) 542-7701.

Sincerely,

*Teresa M. Bainton*

Teresa M. Bainton
Director, New York Multifamily Hub

Cc: Martin Siroka, Esq.
    Binham McCutchen LLP

    David Stoopler
    Legislative Assistant to U.S. Senator Charles E. Schumer

    Ellen Davidson
    Legal Aide

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:08-cv-00193 (RBW) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ALPHONSO JACKSON, AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**[Proposed] ORDER**

Upon the Court's consideration of defendants' motion to dismiss, the opposition thereto, and the entire record herein, it is, this _____ day of _____, 2008,

ORDERED that defendants' motion to dismiss is granted; and it is

FURTHER ORDERED that plaintiffs' Complaint is dismissed with prejudice.

_____
The Honorable Reggie B. Walton
United States District Judge