# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ST. MARKS PLACE HOUSING COMPANY, INC.;   )
ST. MARKS PLACE ASSOCIATES; STELLAR CP LP;  )
and CASTLETON GP LLC,     )
         )
        Plaintiffs,   )
         )
  - against -   )  Case No. 1:08-cv-00193 (RBW)
         )
UNITED STATES DEPARTMENT OF HOUSING   )
AND URBAN DEVELOPMENT; and ROY   )
BERNARDI, AS ACTING SECRETARY OF THE   )
UNITED STATES DEPARTMENT OF HOUSING   )
AND URBAN DEVELOPMENT,   )
         )
        Defendants.   )
         )

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL THE RETURN OF PURPORTEDLY PRIVILEGED MATERIAL

David J. Butler (D.C. Bar No. 914473)
Robert W. Piatt III (D.C. Bar No. 502513)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Phone: (202) 373-6000
Fax:   (202) 373-6001
*Attorneys for Plaintiffs*

OF COUNSEL TO PLAINTIFFS:

Stephen B. Meister (pro hac vice application pending)
MEISTER SEELIG & FEIN, LLP
2 Grand Central Tower
140 E. 45th Street, 19th Floor
New York, NY 10017
Phone: (212) 655-3500
Fax:   (212) 655-3535

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................2

ARGUMENT..................................................................................................................5

I.     THE HUD OGC MEMO IS NOT PROTECTED UNDER THE
DELIBERATIVE PROCESS PRIVILEGE .........................................................5

     A.     Requirements for Application of the Deliberative Process Privilege......................5

     B.     The HUD OGC Memo is not "Predecisional".........................................................6

           1.     The Deliberative Process Privilege Does Not Protect
Documents Which State "Working Law" or "Agency Policy"..................6

                  a.     The HUD OGC Memo Represents Definitive Agency
Working Law, not the Author's Personal Opinion........................7

           2.     The Deliberative Process Privilege May Not Be Used by the
Government to Create "Secret Law"...........................................................9

     C.     The HUD OGC Memo is not "Deliberative" ...........................................................10

     D.     HUD Has Failed to Carry it's the Burden of Proof in
Establishing the Availability of the Deliberative Process Privilege.....................11

     E.     Disclosure of the HUD OGC Memo Outweighs the
Defendants' Interest in Shielding it as Privileged .................................................12

II.     EVEN IF THE COURT DETERMINES THAT THE DELIBERATIVE
PROCESS PRIVILEGE APPLIES TO THE HUD OGC MEMO,
DEFENDANTS HAVE WAIVED ANY SUCH PRIVILEGE BY PROVIDING
THE DOCUMENT TO THIRD PARTIES WITHOUT RESERVATION ......................15

     A.     Defendants Waived the Privilege by Having Freely
Provided the HUD OGC Memo to an Attorney for Plaintiffs................................15

     B.     Defendants Waived the Privilege by Providing the
HUD OGC Memo to Senator Schumer's Office
At a time When the Contents of the
Memo were Already in the Public Realm ...............................................................17

CONCLUSION ...............................................................................................................20

## TABLE OF AUTHORITIES

### Cases Cited

*Coastal States Gas Corp. v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980)................................................................*passim*

*Cobell v. Norton,*
213 F.R.D. 1 (D.D.C. 2003) ..............................................................................9

*Defense of Animals v. National Institutes of Health,*
__ F. Supp.2d __, 2008 WL 1708413 (D.D.C. 2008) ...............................5, 6

*Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,*
532 U.S. 1, 121 S.Ct. 1060 (2001) ...................................................................5

*Dow Jones & Co., Inc. v. Department of Justice,*
917 F.2d 571 (D.C. Cir. 1990)........................................................................17

*Evans v. U.S. Office of Personal Management,*
276 F.Supp.2d 34 (D.D.C. 2003)..................................................................6, 9

*Hinckley v. United States,*
140 F.3d 277 (D.C. Cir. 1998).......................................................................13

*Mead Data Central, Inc. v. U.S. Dep't of the Air Force,*
566 F.2d 242 (D.C. Cir. 1977)........................................................................11

*NLRB v. Sears,*
421 U.S. 132, 95 S.Ct. 1504 (1975) ................................................................6

*Petroleum Info. Corp. v. Dep't of the Interior,*
976 F.2d 1429 (D.C. Cir. 1992)........................................................................6

*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997).......................................................................15

*Sterling Drug, Inc. v. FTC,*
450 F.2d 698 (D.C. Cir. 1971) ......................................................................10

*Tax Analysts v. I.R.S.,*
294 F.3d 71 (D.C. Cir. 2002)....................................................................5, 6, 9

*The Wilderness Society v. United States Dep't of the Interior,*
344 F. Supp.2d 1 (D.D.C. 2004)...................................................................5, 6

## **Statutes, Regulations and Treatises Cited**

NHA Section 207, 12 U.S.C. § 1713 ........................................................................................ 2, 8

NHA Section 223(f), 12 U.S.C. § 1715n .................................................................................... 2

NHA Section 250(a), 12 U.S.C. § 1715z-15(a) ................................................................. *passim*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC, <br><br> Plaintiffs, <br><br> - against - <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ROY BERNARDI, AS ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 1:08-cv-00193 (RBW) ) ) ) ) ) ) ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS AND TO COMPEL THE RETURN OF
PURPORTEDLY PRIVILEGED MATERIAL**

Plaintiffs St. Marks Place Housing Company, Inc., St. Marks Place Associates, Stellar CP LP and Stellar Castleton GP LLC ("Plaintiffs"), respectfully submit this memorandum in opposition to the motion of defendants, the United States Department of Housing and Urban Development ("HUD") and Roy Bernardi, Acting Secretary of HUD (the "Secretary," and, together with HUD, collectively the "Defendants"), which seeks (i) to strike from the docket Plaintiffs' response to Defendants' motion to dismiss (the "Motion to Dismiss"), including Plaintiffs' memorandum of law and Exhibit C to the declaration of Stephen B. Meister submitted by Plaintiffs in opposition to the Motion to Dismiss, on the ground that Exhibit C is protected from disclosure by the deliberative process privilege; (ii) to compel Plaintiffs to return all copies of this purportedly

1

privileged document in their possession; and (iii) an emergency stay of proceedings relating to the Motion to Dismiss, including the deadline for Defendants to serve their reply brief, pending the Court's expedited review of this motion.[1]

## PRELIMINARY STATEMENT

By this action, Plaintiffs seek a declaratory judgment declaring erroneous as a matter of law HUD's determination to apply Section 250(a) of the National Housing Act, 12 U.S.C. Section 1715z-15 ("Section 250(a)") to, and thereby block Plaintiffs' prepayment of, a HUD-insured, Section 236-assisted, thirty one (31) year old senior mortgage loan (the "Senior Mortgage"), endorsed for insurance by HUD in 1977 under Section 207 of the NHA, pursuant to Section 223(f) of the NHA. See Complaint. Under HUD's regulations in effect at the time the Senior Mortgage was endorsed for insurance by HUD in 1977, the Senior Mortgage was required to be freely prepayable without restriction (other than providing thirty days' advance notice). By applying Section 250(a) to the Senior Mortgage, HUD was able to and did attach several onerous and restrictive economic conditions[2] to the prepayment of the Senior Mortgage (effectively blocking the prepayment of the Senior Mortgage), which HUD would not have been permitted to impose absent applying Section 250(a).

Plaintiffs contend that HUD's determination to apply Section 250(a) to the Senior Mortgage was incorrect and should be overturned as a matter of law by the declaratory judgment of this Court. Defendants moved to dismiss Plaintiffs' complaint, arguing that

---

[1]    As Defendants note, Plaintiffs have consented to the Defendants' request for a stay of proceedings on the Motion to Dismiss pending the Court's ruling on the instant motion.

[2]    HUD has denied Plaintiffs' request to prepay the Senior Mortgage unless Plaintiffs agree to expend a minimum of $15,000 per unit in repairs and rehabilitation costs or replace two or more major building components, and to execute a rental use agreement, to be recorded in first lien position on the premises until November 1, 2017, severely limiting the rents that can be charged at the premises.

the Secretary's determination to apply Section 250(a) to the Senior Mortgage was correct, and that in any event the Secretary's determination to do so must, Defendants have argued, be given special deference by this Court. In opposing Defendants' Motion to Dismiss, Plaintiffs annexed to the declaration of Stephen B. Meister, as Exhibit C thereto, a copy of a memorandum dated October 11, 2007 from HUD's Office of General Counsel, specifically from Millicent B. Potts, Assistant General Counsel for Multifamily Mortgage Insurance, to Beverly J. Miller, Director, HUD's Office of Asset Management (the "HUD OGC Memo"). The HUD OGC Memo contains a conclusive and definitive statement of HUD agency law, summarizing its long-standing legal determination that Section 250(a) does not apply to the prepayment of mortgages (such as the Senior Mortgage at issue here), where the prepayment restriction contained in the Senior Mortgage note conflicts with the HUD regulations in effect at the time such mortgage note was endorsed for insurance by HUD.

The HUD OCG Memo definitively concludes that the provision in the Senior Mortgage note purporting to require the Secretary's consent to a prepayment contradicted the Section 207 regulations in effect in 1977, when such mortgage note was endorsed by HUD for insurance (i.e., 24 C.F.R. 207.14), and that, in consequence, under HUD's long-standing policy, as set forth in the agency's working law, such provision is void and of no force or effect. Defendants claim that the HUD OGC Memo is protected from disclosure solely by the qualified deliberative process privilege[3] and, as such, should be stricken from the record. However, as demonstrated herein, such qualified privilege does not

---

[3]       As is pointedly asserted by HUD's General Counsel, Robert M. Couch, in his declaration in support of the instant motion to strike, such motion is based solely on the deliberative process privilege; HUD does not seek to strike the HUD OGC Memo under either the attorney-client privilege or the attorney work-product privilege. See Couch Decl. ¶ 5.

attach to the HUD OGC Memo, and, in any event, to the extent the Court determines that such privilege does attach to the HUD OGC Memo, such privilege was waived by the previous volitional disclosure of the HUD OGC Memo by HUD to third parties, including, inter alia, Plaintiffs' own counsel.

The HUD OGC Memo is not protected by the deliberative process privilege. It is neither deliberative nor predecisional. It does not contain an advisory opinion or recommendation to the Secretary – rather, it contains an authoritative statement of HUD's long-standing legal analysis on prepayment of mortgage loans. As such, the HUD OGC Memo represents the "working law" of the agency. The deliberative process privilege is a qualified privilege that does not apply to such a statement of agency policy or working law. See infra at 5-14.

But even if the HUD OGC Memo is found to be protected by the deliberative process privilege, such privilege has been waived by HUD's having heretofore distributed the memo, and related the contents thereof to the public generally, and in particular by voluntarily giving a copy of the HUD OGC Memo to Plaintiffs' counsel. As set forth in the accompanying declaration of Robert Harding, an attorney for Plaintiffs (the "Harding Decl."), on or about October 31, 2007, the HUD OGC Memo was provided to him by a high-ranking employee of HUD. See Harding Decl. ¶ 4. The HUD OGC Memo was provided to Harding with no promises of confidentiality. Id. at ¶ 5. And, as admitted by Defendants, the HUD OGC Memo was also provided by HUD to Senator Charles Schumer on October 25, 2007. See Defendants' Memorandum in Support of Motion to Strike ("Defendants' Mem.") at 2. At the time this memo was provided to these third parties, HUD's original decision that Section 250(a) did not apply to the

Senior Mortgage was already public knowledge. See October 22, 2007 article from the Staten Island Advocate (the "S.I. Advocate Article"), attached to the accompanying declaration of Stephen B. Meister as Exhibit A. Thus, even if the deliberative process privilege is determined to attach to the HUD OGC Memo, Defendants have waived any protection which would otherwise have been available.[4] See infra at 15-19.

For all of these reasons, and those set forth hereinafter, it is respectfully requested that Defendants' motion to strike be denied in all respects.

## ARGUMENT

### I.

### THE HUD OGC MEMO IS NOT PROTECTED UNDER THE DELIBERATIVE PROCESS PRIVILEGE

**A.    Requirements for Application of the Deliberative Process Privilege**

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *See The Wilderness Society v. United States Dep't of the Interior*, 344 F. Supp.2d 1, 10 (D.D.C. 2004), *citing Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060 (2001). The privilege, however, does not protect statements of agency policy or statements explaining actions already taken by an agency. *In Defense of Animals v. National Institutes of Health*, __ F. Supp.2d __, 2008 WL 1708413 (D.D.C. 2008), *citing Tax Analysts v. I.R.S.*, 294 F.3d 71, 80 (D.C. Cir. 2002).

---

[4]    In fact, in the declaration of HUD General Counsel Robert M. Couch accompanying the instant motion to strike, Attorney Couch states that he "hereby assert[s] the deliberative process privilege with respect to the [HUD OGC Memo]." (emphasis added). See Couch Decl. ¶ 5. The present tense of this statement tellingly indicates that HUD did not determine (or assert) that the HUD OGC Memo was privileged at the time it was written and distributed in October 2007, when it was disclosed to third parties outside of the agency.

Subject to certain limitations and waivers hereinafter discussed, documents are protected from disclosure under the deliberative process privilege where the agency successfully carries its burden of proof demonstrating that the document is both (1) predecisional and (2) deliberative. *See The Wilderness Society*, 344 F.Supp.2d at 10. "A document is predecisional if it was 'prepared in order to assist an agency decision-maker in arriving at his decision.'" *Id., citing Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A document is deliberative where it "reflects the give-and-take of the consultative process." *In Defense of Animals*, __ F. Supp.2d at __, 2008 WL 1708413, *citing Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Thus, the privilege "protects 'predecisional communications' reflecting an agency's internal deliberations, but not communications that explain a decision that has already been made." *Tax Analysts*, 294 F.3d at 80.

**B.    The HUD OGC Memo is not "Predecisional"**

**1.    The Deliberative Process Privilege Does Not Protect
Documents Which State "Working Law" or "Agency Policy"**

In order for a document to be considered "predecisional," courts must consider not just whether the document was issued before the agency made its final decision but whether the document "is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *See Coastal States*, 617 F.2d at 866. The privilege does not apply where the document contains conclusive statements of agency policy. *See NLRB v. Sears*, 421 U.S. 132, 153, 95 S.Ct. 1504 (1975). *See also Evans v. U.S. Office of Personal Management*, 276 F.Supp.2d 34, 39 (D.D.C. 2003) (stating that no privilege attaches where the office of general counsel memo at issue "conclusively sets forth the agency's legal position on that issue, and there

is nothing on the face of the document or in any of the agency's submissions to support an argument that this memorandum was part of a predecisional process"). Where the document is not subjective or personal, and simply contains a straightforward explanation of agency regulations in specific factual settings, the privilege should not apply. *See Coastal States*, 617 F.2d at 868 (stating that such documents "are more akin to a 'resource' opinion about the applicability of existing policy to a certain state of facts, like examples in a manual, to be contrasted to a factual or strategic advice giving opinion"). Under these well-established guidelines, it is clear that the HUD OGC Memo at issue here, which simply applies HUD's long-established legal analysis regarding mortgage note restrictions which are inconsistent with HUD's regulations in effect at the time, is not predecisional in nature and simply (and definitively) sets forth HUD's long-established agency law regarding such regulation-violating mortgage note provisions.

      a.    The HUD OGC Memo Represents Definitive Agency
                Working Law, not the Author's Personal Opinion

The HUD OGC Memo sets forth HUD's long-established "working law" regarding situations where a prepayment is made, and the mortgage note contains a prepayment restriction which is inconsistent with HUD's regulations in effect at the time the note was endorsed for insurance. In this regard, the HUD OGC Memo dryly sets forth the analytical framework that HUD routinely follows when it receives a prepayment request, as well as HUD's procedure regarding such requests:

> "When we receive prepayment requests for OGC review, we first look at the type of mortgage insurance program involved … and then we review the prepayment restriction in the note to determine if it is a valid prepayment restriction (one required by statute, regulation or HUD administrative requirement). If that restriction is inconsistent with the statute, regulations or administrative

> requirements which were in effect at the time the note was
> endorsed for mortgage insurance, we consider the
> prepayment restriction void as it relates to HUD.

*See* HUD OGC Memo p. 1. The author of the HUD OGC Memo then sets forth which of

HUD's regulations then in effect imposed prepayment restrictions, and pointed out that

under the Section 207 regulations in effect at the time (1977), the only permissible

restriction to an owner's prepayment was the providing of thirty (30) days' advance

notice. *Id.* Citing expressly to the "long-standing legal view" of HUD's Office of

General Counsel, that "prepayment lock-outs must be consistent with the regulations in

effect at the time of final endorsement of the note," the author then concluded that the

prepayment restriction in the note was void and that Section 250 of the Act did not apply

to the prepayment restriction in the note. *Id.*

In *Coastal States*, the D.C. Circuit Court of Appeals analyzed documents

containing similar statements of policy (as opposed to personal or subjective opinions)

and held that, in such circumstances, the reasons for applying the deliberative process

privilege have no application:

> "The documents do not contain subjective, personal
> thoughts on a subject, so public knowledge of the
> documents will not subject the writer to ridicule or
> criticism. Nor do they discuss the wisdom of the merits of
> a particular agency policy, or recommend new agency
> policy, raising the possibility that their disclosure would
> mislead the public; rather, they simply explain and apply
> established policy."
>
> \*     \*     \*
>
> "We can see no possibility whatsoever that an attorney
> performing this job would be less "frank" or "honest" if he
> or she knew that the document might be made known to the
> public…"

*Coastal States*, 617 F.2d at 869.

Additionally, the authoritative tone of the HUD OGC Memo supports the conclusion that the memo is not protected by the deliberative process privilege. Straightforward declaratory phrases such as "we conclude" or "it is the position of [the agency]," as opposed to precatory language such as "we suggest" or "we believe," indicate that the document offers simply an explanation of existing agency policy. *See Tax Analysts v. I.R.S.*, 294 F.3d 71, 81 (D.C. Cir. 2002); *Evans v. U.S. Office of Personal Management*, 276 F.Supp.2d 34, 40 (D.D.C. 2003). In our case, the HUD OGC Memo is replete with authoritative and declaratory language, using language like "given OGC's long-standing legal view that prepayment lock-outs must be consistent with the regulations in effect at the time of final endorsement of the note, our legal position is...." and "we conclude." See HUD OGC Memo.

### 2.     The Deliberative Process Privilege May Not Be Used by the Government to Create "Secret Law"

When governmental advice, or opinions of an agency, become the policy or the rule the agency applies in later cases, such material takes on the character of law, and the agency must not be permitted to shield such information from the public. *See Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003). "[T]he strong theme of this Circuit's deliberative process opinions 'has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealing with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding' or 'final.'" *See Evans*, 276 F. Supp.2d at 41, *quoting Coastal States*, 617 F.2d at 867. In reasoning that agencies should be discouraged from promulgating "secret law," the D.C. Circuit Court in *Coastal States* held:

"The policy of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law with the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it."

*Coastal States*, 617 F.2d at 868, *citing Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971) (emphasis added).

Here, HUD is plainly attempting to shield from disclosure its own body of "secret law," and such efforts should be rejected by the Court. The HUD OGC Memo contains a summary of the law and HUD's legal analysis with regard to prepayment restrictions (contained in mortgage notes) that conflict with the regulations in effect at the time the note was endorsed. The memo does not contain HUD's theories or ideas which go into the making of the law, it contains the law itself – namely, that when a note contains a prepayment restriction inconsistent with HUD regulations in effect at the time of the note's endorsement by HUD, the purported restriction is invalid. In a free democratic republic, the public in general, and Plaintiffs and the Court in particular, have the right to such information. HUD should not be permitted secretly to use this information as it sees fit, choosing to apply its own law and policy as and when it suits the agency.

**C.    The HUD OGC Memo is not "Deliberative"**

It is similarly apparent that the HUD OGC Memo is not deliberative in nature and, therefore, it is not protected under the deliberative process privilege for this independent reason. The memo is neither recommendatory in nature nor does it weigh the pros and cons of the agency's adoption of one view or another. *See Coastal States,*

617 F.2d at 866. The memo does not reflect the "give-and-take" of the deliberative process, which is required in order for a document to come under the protection of the privilege. *Id.* at 868. The HUD OGC Memo simply summarizes HUD's policy regarding the issue here and sets forth a conclusion based on HUD's "long-standing" agency law. Thus, the memo does not even remotely qualify as "deliberative."

**D.      HUD Has Failed to Carry its the Burden of Proof in
         Establishing the Availability of the Deliberative Process Privilege**

The agency has the burden of establishing the availability of the privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (stating that the "[a]gency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue and the course of that process"). Here, HUD has failed to meet its burden. While HUD sets forth general principles underlying the deliberative process privilege, HUD fails to provide any substantive reasons why the privilege should apply to the document at issue here.

HUD claims that the document is "predecisional" because it (1) was "prepared and distributed internally with the agency as part of [HUD's] decisionmaking process...," and (2) was prepared before the Secretary reached his decision. See HUD's Memo in Support, at 6. Thus, HUD seems to be claiming that the HUD OGC Memo is predecisional simply because it was prepared prior to the Secretary's determination. However, as the D.C. Circuit Court has held, that is too broad a reading of the privilege. *See Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977) (stating that "[p]redecisional materials are not exempt merely because they are predecisional...."). As is demonstrated herein, the fact that the document was prepared

internally, prior to the Secretary making his decision on the issue, does not establish that the document was "predecisional." HUD does not explain why the content of the HUD OGC Memo falls within the privilege, or why the memo should not be considered the agency's "working law," or "secret law."

HUD also claims that the HUD OGC Memo is "deliberative" because it reflects "one among a number of legal views" that were presented to the Secretary on the issue. See HUD's Memo in Support at 6. However, HUD fails to identify what these "other legal views" were or when and by whom they were presented. At the very least, HUD could have provided information concerning these "other legal views" in a manner akin to that contained in a privilege log. No such information, however, accompanied HUD's motion. In any event, since the HUD OGC Memo simply summarized HUD's existing policies and the status of the law on the prepayment restriction at issue here, and did not reflect the "give and take" of the deliberative process, HUD's contention that the memo is "deliberative" is meritless. HUD therefore has failed to carry its burden.

E.     **Disclosure of the HUD OGC Memo Outweighs the Defendants' Interest in Shielding it as Privileged**

The Court of Appeals for this Circuit has identified three purposes that the deliberative process privilege is designed to serve, to wit: (1) to assure that subordinates within an agency will not be inhibited from providing their opinions and recommendations, i.e., to protect the free flow of information; (2) to protect against the premature disclosure of proposed policies prior to their adoption; and (3) to avoid confusion of issues and misleading of the public. See Coastal States, 617 F.2d at 866. In determining whether the privilege attaches to a particular document, the court must undertake a balancing test, weighing the parties' competing interests in disclosure or

nondisclosure of the document. *See Hinckley v. United States*, 140 F.3d 277, 286 (D.C. Cir. 1998). Here, such balancing test tilts decidedly in Plaintiffs' favor.

The HUD OGC Memo merely contains a concise statement of HUD's existing working law regarding the insertion of a prepayment restriction in a mortgage note which conflicts with HUD regulations in effect at the time the note was endorsed for insurance. Thus, disclosure of the HUD OGC Memo will not result in the *premature* disclosure of *proposed* HUD policies; the memo simply summarizes *existing* HUD agency law and policies which were adopted long ago. See 1995 Opinion issued by HUD's Associate General Counsel for Insured Housing, Legal Op. CIM-0111 (May 1, 1995), a copy of which is attached to the Meister Decl. as Exhibit B. Disclosure of the HUD OGC Memo likewise will not inhibit the free flow of information by subordinates – the memo does not contain the author's proposals or recommendations or subjective views; rather, it contains the author's restatement of existing HUD policies and rulings, as set forth in the memo. Finally, disclosure of the memo will not confuse or mislead the public. In fact, disclosure of the memo will result in just the opposite, as it would eliminate the risks associated with the creation of agency "secret law." See supra at 9-10.

On the other hand, since the HUD OGC Memo does summarize the "working law" of the agency, Plaintiff, the Court and the public are entitled to its disclosure. The balancing of the parties' competing interests here weighs heavily in favor of denying Defendants' motion to strike in its entirety. The pristine threshold legal issue in this action is simple – does Section 250(a) of the NHA apply to the Senior Mortgage? Since the resolution of this question requires construing HUD's regulations in effect in 1977, the Plaintiffs and the Court are entitled to review and consider, long-standing HUD

agency law on this very question, and this is exactly what is reflected and summarized in the HUD OGC Memo. The deliberative process privilege is a limited, qualified privilege and will not be invoked when on balance the court and the private party's interest in exposing the subject document outweighs the policies underlying the privilege. As shown above, this policy is to promote the free exchange of ideas and views between departments of government agencies, and not to permit an agency selectively to apply its working law as and when it chooses.

Prior to HUD's serving the instant motion to strike, Plaintiffs' counsel offered voluntarily to agree to much of the relief sought in this motion. Thus, Plaintiffs' counsel offered to (i) withdraw the HUD OGC Memo from the Court's file, (ii) substitute its memorandum of law in opposition to HUD's Motion to Dismiss with a memorandum not quoting from the HUD OGC Memo, (iii) return all copies of the HUD OGC Memo in Plaintiffs' possession, and (iv) present the HUD OGC Memo *in camera* to the Court. See Meister Decl., ¶ 5. Defendants rejected this offer on May 14th, stating that such offer "wouldn't resolve the issue for us," and filed their motion to strike that very day. See Meister Decl., ¶ 5 and Exhibit D thereto. Thus, it is clear that, despite the assertions made in the motion to strike, Defendants have no interest here in promoting the free flow of ideas between and among HUD's personnel. Rather, their goal is to withhold from this Court a concise statement of agency law, since they do not want this Court to apply that law to the Senior Mortgage at issue here. Said differently, the document sought to be stricken plainly shows that HUD's decision to apply Section 250(a) to the Mortgage Note was a wrong decision as a matter of law.

## II.

### EVEN IF THE COURT DETERMINES THAT THE DELIBERATIVE PROCESS PRIVILEGE APPLIES TO THE HUD OGC MEMO, DEFENDANTS HAVE WAIVED ANY SUCH PRIVILEGE BY PROVIDING THE DOCUMENT TO THIRD PARTIES WITHOUT RESERVATION

A.    **Defendants Waived the Privilege by Having Freely Provided the HUD OGC Memo to an Attorney for Plaintiffs**

It is well-settled law that an agency may waive the protection of a privilege through the voluntary disclosure of an otherwise privileged document to a third party. *See In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997). This is precisely what HUD has done here and, as such, HUD cannot now turn back the clock and claim privilege.

As is set forth in the accompanying Harding Declaration, on or about October 31, 2007, a high-ranking HUD employee provided Robert Harding, an attorney representing Plaintiffs, with a copy of the HUD OGC Memo. Harding Decl. ¶ 4. The memo was provided to Mr. Harding voluntarily, and with no reservation of privilege. Id. at ¶'s 5. At the time Mr. Harding received the memo, its contents were already known publicly, having been referenced in at least one local newspaper article. See the S.I. Advocate Article.

The text of the S.I. Advocate Article makes clear that HUD's decision to permit Plaintiffs to prepay their Senior Mortgage was a matter of public knowledge at that time. Specifically, the article cites to unnamed sources who say that "HUD is expected to approve" the prepayment of the Senior Mortgage and quotes an attorney representing the project's residents, who states her belief that HUD had already made the decision to permit the prepayment of the Senior Mortgage. Senator Charles Schumer is also quoted

in the article, speaking as if HUD had already made its decision and stating that HUD's decision "is a mistake and is not in keeping with its mission to preserve affordable housing." Senator Schumer was also quoted as stating that he intends to "work with the residents and pressure HUD to reverse its decision," thus indicating that a decision to approve the prepayment had already been made by HUD. Id.

Defendants do not contend that Plaintiffs have obtained the HUD OGC Memo wrongfully. Defendants simply repeat throughout their motion papers the mantra that the disclosure was "unauthorized." However, it is Defendants' burden to establish the availability of the privilege – and included within that burden is proving that the disclosure was unauthorized. Such a claim is disputed by Mr. Harding, who makes an unrebutted statement in his accompanying declaration that the HUD OGC Memo was given to him by a high-ranking HUD employee with no privilege reserved. See Harding Decl. ¶'s 4-5. In any event, since Defendants do not even know the name of the HUD employee who supplied the memo to Mr. Harding, any claim that the disclosure was "unauthorized" is no more than speculation.

Prior to Defendants' making the instant motion, Defendants' counsel was informed by Plaintiffs' counsel of the manner in which Plaintiffs acquired the HUD OGC Memo and specifically of Mr. Harding's first and last name and the name of his law firm. See Meister Decl. ¶ 5. Thus, Defendants could have sought Mr. Harding's deposition to investigate the facts surrounding HUD's disclosure of the memo. Instead, Defendants made the instant motion the very next day without even attempting to look into the facts surrounding the disclosure. Defendants did so at their peril, as it is their burden to establish the existence of the privilege.

Additionally, Defendants claim that the HUD OGC Memo was given very limited circulation within the agency, describing the distribution of the memorandum as on a "strictly need-to-know basis." See Couch Decl. ¶ 11. Of course, the fact that the memo was only circulated to high-ranking individuals at HUD, and that one such individual ultimately provided the memo to Mr. Harding, only supports the conclusion that the disclosure was made by an authorized individual.

**B.      Defendants Waived the Privilege by Providing the HUD OGC Memo to Senator Schumer's Office At a time When the Contents of the Memo were Already in the Public Realm**

In addition to waiving the deliberative process privilege (assuming such privilege was applicable to the memo in the first place) by disclosing the memo to Mr. Harding, Defendants independently waived such privilege by disclosing the memo to Senator Schumer's office at a time when the contents of the memo were already in the public realm. Although Defendants cite to a series of cases for the general proposition that disclosure to a member of Congress does not waive the deliberative process privilege (see Defendants' Memorandum at 6-7), such cases have no application here, because here, at the time of the disclosure by HUD of the HUD OGC Memo to Senator Schumer, HUD had already concluded its consideration of the issue whether Plaintiffs should be permitted to prepay the Senior Mortgage and whether Section 250(a) applies to the Senior Mortgage. Where an agency has ended its consideration of an issue that is the subject of an intra-agency document, subsequent disclosure to a member of Congress results in a waiver of the deliberative process privilege. *See Dow Jones & Co., Inc. v. Department of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990).

Defendants state that they faxed a copy of the HUD OGC Memo to Senator Schumer on October 25, 2007. See Couch Decl. ¶ 9. However, as set forth above, by that time it was apparent that HUD had already reached a decision to permit the prepayment of the Senior Mortgage, and the conclusions reached in the HUD OGC Memo were widely known to the public. In this regard, on October 22, 2007 the S.I. Advocate Article appeared, reporting of HUD's intention to permit the prepayment of the Senior Mortgage. See Meister Decl. Exhibit A (citing unnamed sources who say that "HUD is expected to approve" the prepayment of the Senior Mortgage). The article also quotes (i) a Legal Aid attorney working with the project's residents, who states her belief that HUD has already made the decision to permit the prepayment of the Senior Mortgage, and (ii) Senator Schumer, who states that HUD's decision "is a mistake and is not in keeping with its mission to preserve affordable housing." Id.

Furthermore, Senator Schumer's December 20, 2007 press release supports the conclusion that the contents of the HUD OGC Memo were publicly known at the time the memo was released to Senator Schumer. See Meister Decl. Exhibit E. In his December 20, 2007 press release, Senator Schumer announces that "he has *convinced* [HUD] to apply Section 250(a) ... to Castleton Park...." Id. (emphasis added). The fact that he had to "convince" HUD to apply Section 250(a) to the Senior Mortgage, coupled with the quote of a statement made by Senator Schumer a week prior to the October 22, 2007 S.I. Advocate Article, referencing HUD's "mistake" and his plan "to work with residents and pressure HUD to reverse its decision," clearly shows that by the time the HUD OGC Memo was released to Senator Schumer, it was known to the public that HUD had

decided to not apply Section 250(a) and to permit the prepayment of the Senior Mortgage.[5]

Finally, it is clear from the declaration of Robert Couch, HUD's General Counsel, that HUD for the first time invoked (or at least purported to invoke) the privilege with respect to the HUD OGC Memo as of the date of his declaration, May 14, 2008. See Couch Decl. ¶ 5 (stating that he "hereby assert[s] the deliberative process privilege with respect to [the HUD OGC Memo]"). Tellingly, Mr. Couch does not assert in his declaration that HUD had classified the HUD OGC Memo as privileged at any time prior to the date of his declaration. Nor could Attorney Couch have made any such assertion, given the fact that HUD had placed the HUD OGC Memo into the public realm in October 2007, shortly after it was issued.

Based on these facts, it is clear that HUD had made its decision to approve the prepayment of the Senior Mortgage (or, at a minimum, had introduced the contents of the HUD OGC Memo into the public realm) prior to sending the HUD OGC Memo to Senator Schumer. Thus, even if considered privileged when written, at the time the HUD OGC Memo was disclosed to Senator Schumer, HUD had ended its deliberations on the issue before then and thus, any such privilege was waived by the disclosure to Senator Schumer.

---

[5]    It is important to note that, by referencing the above-statements from Senator Schumer's press releases and in newspaper articles, Plaintiffs are not trying to imply that the Senator acted in any way inappropriately. It is clear that Senator Schumer's efforts were entirely appropriate – they were undertaken by the Senator to protect his constituents, as Senator Schumer is the senior Senator from New York, the state in which the property at issue is situated, and, additionally, the Senator is the ranking member of the Housing Subcommittee. Plaintiffs are simply saying that the decision he convinced the Secretary to make was wrong as a matter of law.

**CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the Defendants'

motion to strike be denied in all respects, and that the Plaintiffs be awarded all such other

and further relief as the Court deems just and proper.


Dated: May 28, 2008


/s/ David J. Butler
David J. Butler (D.C. Bar No. 914473)
Robert W. Piatt III (D.C. Bar No. 502513)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Phone:  (202) 373-6000
Fax:     (202) 373-6001
*Attorneys for Plaintiffs*


OF COUNSEL TO PLAINTIFFS:

Stephen B. Meister (pro hac vice application
      pending)
MEISTER SEELIG & FEIN, LLP
2 Grand Central Tower
140 E. 45th Street, 19th Floor
New York, NY 10017
Phone: (212) 655-3500
Fax:     (212) 655-3535

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record in this matter who are registered on the CM/ECF.

/s/ David J. Butler

A/72549472.1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; | ) | |
| ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; | ) | |
| and CASTLETON GP LLC, | ) | Case No. 1:08-cv-00193 (RBW) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| - against - | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HOUSING | ) | |
| AND URBAN DEVELOPMENT; and ROY BERNARDI, | ) | |
| AS ACTING SECRETARY OF THE UNITED | ) | |
| STATES DEPARTMENT OF HOUSING AND | ) | |
| URBAN DEVELOPMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ROBERT M. HARDING IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

ROBERT M. HARDING, under penalties of perjury, declares as follows:

1.    I am a shareholder in the law firm of Greenberg Traurig, LLP, and have been counseling and representing the Plaintiffs in the above-captioned action in connection with the subject matter of this action.  As such, I am fully familiar with the facts and circumstances set forth herein.  I submit this declaration in opposition to the Defendants' motion (i) to strike from the docket Plaintiffs' response to Defendants' motion to dismiss (the "Motion to Dismiss"), including Plaintiffs' memorandum of law and Exhibit C to the declaration of Stephen B. Meister submitted by Plaintiffs in opposition to the Motion to Dismiss, on the ground that Exhibit C is protected from disclosure by the deliberative process privilege; and (ii) to compel Plaintiffs to return all copies of this purportedly privileged document in their possession.

1

2.      On September 25, 2007, I attended a meeting at HUD's offices in Washington, D.C. to discuss the Plaintiffs' plan to prepay a HUD-insured, Section 236-assisted, thirty one (31) year old senior mortgage loan (the "Senior Mortgage"), endorsed for insurance by HUD in 1977 under Section 207 of the NHA, pursuant to Section 223(f) of the NHA, which Senior Mortgage served to finance Castleton Park Apartments in Staten Island, New York.

3.      Those in attendance at this September 25, 2007 meeting included (i) other attorneys representing Plaintiffs (Stephen Meister of Meister Seelig & Fein LLP and Harold Levy and Martin Siroka of Bingham McCutchen LLP), (ii) representatives and principals of Plaintiffs (Laurence Gluck and Jeffrey Davis) and (iii) representatives of HUD (General Counsel Robert Couch, Assistant General Counsel for Multifamily Housing Millicent Potts and Associate General Counsel for Insured Housing and Finance John Daly).  Then-Deputy (and presently Acting) Secretary of HUD Roy Bernardi also stopped by and attended the meeting briefly.  There were also several individuals present at the meeting who, upon information and belief, were part of the staff of the Office of Housing, although I do not know the names of these individuals.

4.      Following this meeting, I was informed by a high-ranking representative of HUD that HUD's counsel staff had agreed that Section 250(a) did not apply to the Senior Mortgage note.  Thereafter, on or about October 31, 2007, the same high-ranking HUD official provided me with a copy of a memorandum prepared by HUD's office of General Counsel.  That memorandum (the "HUD OGC Memo"), dated October 11, 2007, from Millicent B. Potts, HUD's Assistant General Counsel for Multifamily Mortgage Insurance, to Beverly J. Miller, Director, Office of Asset Management, is attached as

Exhibit C to the May 5, 2008 declaration of Stephen B. Meister submitted in opposition to the Defendants motion to dismiss the Plaintiffs' complaint in this action.

5.     The HUD OGC Memo was provided to me voluntarily – the high-ranking HUD representative who provided me with the memo did not attach any conditions to the delivery of the memo to me or advise me that the memo was considered privileged.  I was also informed by this individual at the time that it was expected that the Secretary would be following up shortly with a final decision consistent with the conclusion set forth in the HUD OGC Memo.  The individual who provided the HUD OGC Memo to me is not part of HUD's Office of General Counsel.

6.     After I received the HUD OGC Memo, I forwarded the memo to other attorneys representing Plaintiffs in connection with the issues raised in this action.

7.     I have not received a subpoena in this matter.

Executed:  May 28, 2008

Robert M. Harding

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC, | ) ) ) ) | Case No. 1:08-cv-00193 (RBW) |
| Plaintiffs, | ) ) | |
| - against - | ) ) | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ROY BERNARDI, AS ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

DECLARATION OF STEPHEN B. MEISTER IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE

STEPHEN B. MEISTER, under penalties of perjury, declares as follows:

1.    I am a partner in the law firm of Meister, Seelig & Fein, LLP, attorneys for the Plaintiffs in the above-captioned action (*pro hac vice* pending).  As such, I am fully familiar with the facts and circumstances set forth herein.  I submit this declaration in opposition to the Defendants' motion (i) to strike from the docket Plaintiffs' response to Defendants' motion to dismiss (the "Motion to Dismiss"), including Plaintiffs' memorandum of law and Exhibit C to the declaration of Stephen B. Meister submitted by Plaintiffs in opposition to the Motion to Dismiss, on the ground that Exhibit C is purportedly protected from disclosure by the deliberative process privilege; and (ii) to compel Plaintiffs to return all copies of this purportedly privileged document in their possession.

2.    Attached as <u>Exhibit A</u> is a copy of an October 22, 2007 article from the Staten Island Advocate entitled "Emergency meeting tonight for Castleton Park residents."

3.    Attached as <u>Exhibit B</u> is a true and accurate copy of a 1995 Opinion issued by HUD's Associate General Counsel for Insured Housing, Legal Op. CIM-0111 (May 1, 1995) (the "1995 HUD Opinion")."

4.    On May 13, 2008, I received an e-mail from Kathryn Wyer, an attorney at the Department of Justice representing Defendants in this matter, in which Ms. Wyer, *inter alia*, asserted that the document attached to my May 5, 2008 declaration in opposition to Defendants' motion to dismiss the complaint herein (the "HUD OGC Memo"), was subject to the deliberative process privilege. Ms. Wyer's e-mail requested that Plaintiffs immediately return all copies of the HUD OGC Memo to her and that Plaintiffs remove the HUD OGC Memo from the public docket and replace their opposition to Defendants' motion to dismiss with opposition papers that do not quote from the HUD OGC Memo. Attached hereto as <u>Exhibit C</u> is a true and accurate copy of the e-mail I received on May 13, 2008 from Ms. Wyer.

5.    Later on May 13, 2008, I spoke to Ms. Wyer regarding her claim that the HUD OGC Memo was subject to the deliberative process privilege. I expressed to Ms. Wyer my view that the document was not subject to the privilege, and, that, in any event, any such privilege had been waived by the Defendants when the document was given to another of Plaintiffs' attorneys, Mr. Robert Harding, of the law firm Greenberg Traurig, LLP, by a HUD employee. At that time Ms. Wyer advised me that the HUD OGC Memo had also been provided to Senator Charles Schumer some time in October 2007. In order

to avoid unnecessary motion practice, during this telephone conversation, I offered to (i) withdraw the HUD OGC Memo from the Court's file, (ii) substitute Plaintiffs' memorandum of law in opposition to HUD's Motion to Dismiss with a memorandum not quoting from the HUD OGC Memo, (iii) present the HUD OGC Memo *in camera* to the Court, and (iv) return all remaining copies of the HUD OGC Memo in Plaintiffs' possession. Ms. Wyer sent me an e-mail the next day, May 14, 2008, rejecting this offer, stating that such offer "wouldn't resolve the issue for us." Attached as Exhibit D is a true and accurate copy of the e-mail I received on May 14, 2008 from Ms. Wyer. Defendants went ahead and filed their motion to strike that very day.

6.    Attached as Exhibit E is a true and accurate copy of a December 20, 2007 Press Release from the office of Senator Charles Schumer (D-NY), obtained from Senator Schumer's website.

I declare, under penalties of perjury, that the foregoing is true and correct.

Executed: May 5, 2008

Stephen B. Meister

# EXHIBIT A



# REAL-TIME NEWS
**Round-the-clock headlines from Staten Island**

**STATEN ISLAND TODAY**
with **Staten Island Advance**

- Send us your news tips, photos and video

- Top News
- Obituaries
- Sports
- High School Sports
- Business
- Editorials
- Letters to the Editor
- Living
- Entertainment

---

**Browse by day posted:**

Select a date 

---

**Browse by week posted:**

Select a date 

---

**PRINT EDITION**

From today's Advance.
- Island Chamber gets stood up by Fossella
- No beau, no go at junior prom
- Buzzin' cousins keep shoppers at bay

**MORE »**

---

**STATEN ISLAND GUIDE**

View the section Staten Islanders use to navigate their home.

**READ THE GUIDE »**

---

**PHOTO GALLERIES**

# Emergency meeting tonight for Castleton Park residents

**by Staten Island Advance**
**Monday October 22, 2007, 9:52 AM**

Residents of the Castleton Park apartments say bad news is knocking at their door.

They say the Department of Housing and Urban Development (HUD) plans to allow the owner of the two 18-story buildings on St. Mark's Place in St. George to pull out of the affordable housing program known as Mitchell-Lama, which has allowed thousands of low and middle income families to pay below market rents there for more than 30 years. The two buildings include 454 apartments.

Such a move, residents have argued, will allow a bastion of affordable housing to be converted over time into expensive rentals with views of Manhattan and price tags to match. A two-bedroom apartment that today rents for about $870 could eventually jump as high as $2,000, according to tenant leaders who have organized an emergency meeting for tomorrow night to discuss their concerns.

"We are not going to allow it to happen. We are going to fight in court," vowed Judy Montanez, co-chair of the tenants association who moved to Casleton Park in 1975, shortly after it opened.

And residents have some firepower on their side. Councilman Michael McMahon (D-North Shore) and Sen. Charles Schumer (D-N.Y.) oppose allowing Castleton Park to leave Mitchell-Lama. Schumer, chairman of the Senate housing subcommittee, earlier this year helped stopped the proposed $1.3 billion sale of Starrett City, a federally subsidized Manhattan apartment complex.

Sources close to the current negotiations said that HUD is expected to approve Castleton Park's request to prepay an $11 million mortgage and pull out of Mitchell-Lama, which caps rents to no more than 30 percent of a resident's income. Castleton Park is eligible to leave the state affordable housing program, but housing advocates have argued that a clause federally-insured mortgage on the property should prevent that. The clause in the loan says HUD can only grant permission if it can prove there is no need for affordable housing in the area.

"This is a mistake and is not in keeping with its mission to preserve affordable housing," Schumer said in a statement last week.

He said he planned to work with residents and pressure HUD to reverse its decision.

But HUD spokesman Adam Glantz said no such decision has been made.

"I don't know where they are getting that from. The application is still under review. We should have a decision in two to three weeks," he said.



- 0515 News Photos
- Bees in New Springville
- 05/14 News Photos

- 0515 Obituary Photos
- 05/14 Obituary Photos
- 05/13 Obituary Photos

---

**MORE PHOTOS »**

ADVERTISEMENT
- DirectBuy - The #1 way to buy direct for your home.
- Get a Free Quote from the #1 Auto Insurer in the US!
- At Sansone we'll pay off your trade even if you owe up to $10,000 more than it's worth!
- DISCOVER RICHMOND UNIVERSITY MEDICAL CENTER (RUMCSI)- FORMERLY ST. VINCENT'S HOSPITAL

Developer Larry Gluck wants to buy the two buildings and his Stellar Management Co. is already managing the development. St. Mark's Place Associates, the owner, made the request to prepay the mortgage, which would allow the buildings to exit Mitchell-Lama, a state subsidized program created in the 1950s to help working class New Yorkers find affordable rental housing.

Tenant advocates estimate the city has lost 40,000 units of that housing over the last decade, as eligible developers opted out of the government program and sold their buildings to new developers like Gluck. Gluck's spokesman did not return a phone call seeking comment.

If such a move is approved and a sale goes through, most residents who live there now are expected to be protected from rent increases by a special voucher system.

But tenant leaders don't believe the voucher system will cover all the residents, and they expect it to be complicated enough to dissuade people from staying there. Apartments can go to market rate rents after residents move out.

"Tenants will definitely be displaced. People will have to leave the area," said Sharon Valentin, another Castleton Park tenant leader.

Ellen Davidson, the Legal Aid attorney representing the Castleton Park residents, said she believes HUD will disregard a clause in the mortgage that says HUD can only grant permission if it can prove there is no need for affordable housing in the area. Ms. Davidson promised to take the case to court if HUD does that.

--- *Contributed by Karen O'Shea*

Send To A Friend ✉ | Permalink
Share: Reddit | Digg | del.icio.us | Google | Yahoo

## COMMENTS (1)    Post a comment

Posted by **trexach** on 10/22/07 at 9:45AM

THE WATERFRONT PLAN

The conversion of downtown St. George is underway. It has been a plan for some time now. These plans take place without taking into consideration the underprivileged, indigent. It is sad to see that amongst the plan to revitalize the area, there was no plan to at the very least keep low income housing. Where does that leave low income households? Where does that leave people that cannot afford to pay high rents?

Inappropriate? Alert us.                                              🖵 Post a comment

Username (Don't Have a Username? Sign up here):

Password:

☑ Remember Me  [Login]  [Reset]

# EXHIBIT B

www.hudclips.org

[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Bottom] [Next Hit] [Help] [Text Only]

*Preservation*

*Directive Number:* [Prev Hit][Next Hit]**CIM-0111**

Index: 3.600
Subject: Preservation

May 1, 1995

Mr. Richard M. Price
Peabody & Brown
1255 23rd Street, N.W.
Washington, DC  20037

Dear Mr. Price:

Your letter to Michael Flores of the Honolulu, Hawaii Office of the Department of Housing and Urban Development ("HUD") dated January 27, 1995 regarding Maunakea Tower has been referred to our office for reply.

Your letter concerns the eligibility of the above project to participate in the preservation program under the Low-Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA"), 12 U.S.C. 4101 note, or, in the alternative, the eligibility of the project owner to prepay the mortgage. For the reasons set forth below, we have concluded that the project is not eligible for participation under LIHPRHA. Furthermore, we have concluded that the project owner may not prepay its mortgage at this time. The project mortgage will, however, become eligible for prepayment without the Commissioner's consent on November 25, 1996 pursuant to the HUD regulations in effect on the date the mortgage note was initially endorsed for insurance.

The facts, as understood by our office, are as follows. The project mortgage was insured under Section 221(d)(3) of the National Housing Act with a limited dividend mortgagor. The mortgage note received initial endorsement for insurance on October 10, 1974 and was finally endorsed on November 24, 1976. The project is receiving assistance under Section 8 of the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. 1437f, but not as a result of a conversion from rent supplement assistance under Section 101 of the Housing and Urban Development Act of 1965 ("HUD Act"), 12 U.S.C. 1701s. The mortgage note contains a prepayment prohibition for the full term of the mortgage.

A project, to be eligible for participation under LIHPRHA, must meet the eligibility requirements of Section 229 of LIHPRHA. The implementing regulations which govern LIHPRHA eligibility are found at 24 CFR Part 248. Pursuant to LIHPRHA, the determination of "eligible low-income housing" is a two-part process. LIHPRHA defines "eligible low-income housing" as:

"any housing financed by a loan or mortgage-
    (A) that is-
        (i) insured or held by the Secretary under
    section 221(d)(3) of the National Housing Act and
    receiving loan management assistance under
    section 8 of the United States Housing Act of 1937
    due to a conversion from section 101 of the
    Housing and Urban Development Act of 1965;
        (ii) insured or held by the Secretary and
    bears interest at a rate determined under the
    proviso of section 221(d)(5) of the National
    Housing Act;
        (iii) insured, assisted, or held by the
    Secretary or a State or State agency under
    section 236 of the National Housing Act; or
        (iv) held by the Secretary and formerly
    insured under a program referred to in clause (i),
    (ii), or (iii); and
    (B) that, under regulation or contract in effect
before February 5, 1988, is or will within 24 months
become eligible for prepayment without prior approval
of the Secretary." LIHPRHA section 229(1).

While the project meets the second part of the eligibility
test of Section 229(1)(B), it does not meet the first part under
Section 229(1)(A)(i). The project mortgage is receiving
assistance under Section 8 of the Housing Act, but not due to a
conversion from assistance under Section 101 of the HUD Act as
required by the statute. Therefore, the project is not eligible
for assistance under LIHPRHA.

The HUD regulations that govern the mortgage insurance
contract for the project are those which were in effect on the
date the mortgage note was initially endorsed for insurance,
October 10, 1974. The regulations which govern mortgages
insured under Section 221(d)(3) are found at 24 CFR Part 221.
Prepayment privileges are contained at 24 CFR section 221.524.
Section 221.524(a) provides in relevant part that a mortgage may
be prepaid without the Commissioner's prior consent:

    "(ii) Where the mortgagor is a limited distribution
    type, which is not receiving payments from the
    Commissioner under a rent supplement contract executed
    pursuant to the provisions of sections 5.1 et seq. of
    this title, and where the prepayment occurs after the
    expiration of 20 years from the date of final
    endorsement of the mortgage." 24 CFR
    section 221.524(a)(1)(ii) (1974) (emphasis added).

The above regulatory section requires that the mortgagor be a
limited distribution type, that the project not be receiving rent
supplement assistance, and that 20 years have elapsed since the
mortgage note was finally endorsed for insurance before the
mortgage is prepaid. The project owner is a "limited
distribution type." Moreover, the project is not receiving rent
supplement assistance. The mortgage note, however, was not
finally endorsed until November 24, 1976, thus the 20-year time
period from the date of final endorsement will not expire until
November 24, 1996. Therefore, the project mortgage is not yet

eligible for prepayment without HUD's consent pursuant to
Section 221.524(a). It will, however, become eligible for
prepayment without HUD's prior consent on November 25, 1996.

The prepayment prohibition in the note does not change the
result of the above analysis. In this case the governing
regulations, 24 CFR Part 221, and the mortgage note language are
in direct conflict. You are correct that in such cases the
regulations supersede contrary language in the note. The
preamble and interim rules for LIHPRHA reflect the HUD policy
that where there is a conflict between HUD regulations and
mortgage note language, the regulations will govern.
Furthermore, footnote 4 above reflects that the endorsement panel
on the mortgage note provides that the regulations in effect on
October 10, 1974 govern the contract of mortgage insurance. This
position was expressed in the context of LIHPRHA at 56 Fed. Reg.
20262, 20267 (May 2, 1991) as follows:

> "Likewise, if the applicable program regulations at
> section 221.524 or section 236.30 allow prepayment at
> the expiration of 20 years after final endorsement, but
> the mortgage note prohibits prepayment without HUD's
> consent for the full term of the mortgage, HUD would
> construe the regulation as superseding the prepayment
> prohibition in the mortgage note."

Therefore, despite the language in the note prohibiting
prepayment, the project mortgage will become eligible for
prepayment without prior HUD consent on November 25, 1996, which
is after 20 years from the date of final endorsement,
November 24, 1976.

In view of the foregoing, we conclude that the project is
not eligible for participation under LIHPRHA because the project
is not receiving Section 8 assistance due to a conversion from
rent supplement assistance as required by the statute. We also
conclude that the project mortgage is not eligible for prepayment
without HUD's consent, but will become eligible under the
applicable regulations on November 25, 1996, despite language in
the mortgage note prohibiting prepayment.

I hope this letter has resolved your questions in this
matter. If you have any further questions, please contact
Athena Katcheves at (202) 708-3667.

                          Sincerely,

                          /s/David R. Cooper for

                          John J. Daly
                          Associate General Counsel
                          Office of Insured Housing

---

# EXHIBIT C

## Stephen B. Meister

**From:**   Wyer, Kathryn (CIV) [Kathryn.Wyer@usdoj.gov]
**Sent:**   Tuesday, May 13, 2008 10:30 AM
**To:**   Stephen B. Meister; david.butler@bingham.com; robert.piatt@bingham.com
**Subject:** St. Marks Place Housing Co. v. HUD, No. 1:08-cv-00193-RBW

Dear Messrs. Butler, Piatt, and Meister,

I write in regard to the document that you filed in the above-mentioned case on May 5, 2008, as Exhibit C to the Declaration of Stephen B. Meister, attached to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss. As is apparent from the face of the document, this is an internal agency memorandum and is accordingly protected by the deliberative process privilege. I am therefore asking that you return all copies of the document to us and that you also move to withdraw your opposition brief, which quotes from and attaches the document, and have it removed from the public docket in this case. I ask that you respond to this request by close of business today (5 pm EST), May 13. If I do not hear from you by then, please be advised that we plan to file a motion to strike the document and your opposition brief from the record and to seek return of the document and all copies that may have been made.

Please feel free to contact me if you have any questions or wish to discuss this. Should you wish to reach me by phone, I can be reached today at (801) 860-7465.

Sincerely,

Kathy Wyer
*Attorney for Defendants*

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
202 616-8475
202 616-8470 (fax)
kathryn.wyer@usdoj.gov

# EXHIBIT D

## Stephen B. Meister

| | |
|---|---|
| **From:** | Wyer, Kathryn (CIV) [Kathryn.Wyer@usdoj.gov] |
| **Sent:** | Wednesday, May 14, 2008 2:22 PM |
| **To:** | Stephen B. Meister; david.butler@bingham.com; robert.piatt@bingham.com |
| **Subject:** | RE: RE: St. Marks Place Housing Co. v. HUD, No. 1:08-cv-00193-RBW |

Stephen,
As I indicated in my voicemail, we disagree that privilege has been waived, and we are planning to go ahead with our motion to strike. I assume that you will be opposing the motion, but feel free to call if you wish to discuss. I'm now back in DC at 202-616-8475.

Kathy

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
Kathy Wyer
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
202 616-8475
202 616-8470 (fax)
kathryn.wyer@usdoj.gov

# EXHIBIT E



## SENATOR
# Charles E. Schumer
### NEW YORK

*Working for New York*

**TOPICS**
. . . . . . . . . . . .

Latest News

Press Release
Archive

Special Reports

Photo Downloads

Schumer Around NY

| About Chuck | Senate Floor | Press Room | Services for New Yorkers | Kids' Page | Contact | Home |

## Latest News

[□] Printer-friendly Version

FOR IMMEDIATE RELEASE: December 20, 2007

**SCHUMER SCORES VICTORY IN BID TO SAVE MIDDLE-CLASS HOUSING AT CASTLETON PARK, CONVINCES HUD TO TAKE FIRST STEPS TO ENSURE AFFORDABILITY OF BUILDING**

*Following Numerous Letters, Calls and Meetings Between Schumer and HUD, HUD Agrees to Apply Section 250 of Housing Law to Castleton Park*

*Under Section 250, All Rent Changes Must Be Approved by HUD Within Affordability Guidelines, Ownerhsip Changes Must be Agreed to by HUD, and Owners Must Commit to Building Improvements*

*Schumer: This Marks a Big Win for Middle-Class Hou*

Following a months-long fight to ensure middle-class housing affordability continues on Staten Island, U.S. Senator Charles E. Schumer today announced that he has convinced the U.S. Department of Housing and Urban Development (HUD) to apply Section 250 of the National Housing Act to Castleton Park, ensuring the continued affordability of the development. Castleton Park is a 454-unit complex in St. George and one of only two Mitchell-Lama developments on Staten Island. Under Section 250, the current owner must set aside funding for rehabilitation and repairs of the buildings, any rent increases must be approved by HUD within affordability guidelines and all potential buyers of the complex must be approved by HUD. HUD committed to applying the standard following a meeting with Schumer in October.

"This is a very positive development that will preserve affordability for the families and seniors in Castleton Park. HUD has been a welcome partner in protecting much of the vanishing middle-class housing in New York, and I am proud to announce that HUD has agreed to continue that work on Staten Island by applying tenant protections at Castleton Park," Schumer said. "I will continue to work with HUD to ensure that Castleton Park remains affordable for the next generation of Staten Island's hard-working, middle-class families to maintain their way of life."

Since it was constructed in 1974, Castleton Park has relied on a variety of government subsidies to ensure the development's affordability and upkeep, including a HUD-insured mortgage. Under Section 250 of the National Housing Act, HUD generally can only approve the prepayment of a HUD-insured mortgage if the agency determines that the housing is no longer needed as affordable in that community. However, HUD may also allow the prepayment of a mortgage if there is a need for capital rehabilitation at a complex.

Since Castleton Park is in need of repair and rehabilitation, HUD may approve a prepayment, but due to the application of Section 250, several tenant protections will also be applied. First, any rent increases must be approved by HUD and fall within affordability guidelines. Second, any potential buyer must be approved by HUD, allowing tenants and HUD the opportunity to examine the record of potential buyers and to determine if they have and will maintain the affordability and livability of the complex. Finally, any owner under Section 250 must either escrow or take out a line of credit for necessary repairs of rehabilitation of units. For Castleton Park, an owner would be required to put $15,000 per unit into repairs, or $6.8 million for the complex.

"Because of the impressive activism of Castleton Park residents, HUD has laid out a blanket of protections that will preserve affordability and provide much-needed peace of mind in this holiday season to all who live there," said Schumer.

Under Section 250, any prepayment application will have to be considered for 150 days, giving Schumer and the tenants an opportunity to work with HUD to determine the affordability guidelines for any potential rent increases. While HUD maintains that rent increases could be approved at a monthly rate of 30% of 80% of area median income, Schumer will continue to push that standards be set at 30% of 60% of area median income.

Schumer will also use the time to work with HUD to determine the suitability of the proposed buyer, Larry Gluck of Stellar Management. While Mr. Gluck had already submitted papers for prepayment, Schumer and the tenants are concerned at his troubling record running other affordable housing buildings. During Mr. Gluck's tenure as Castleton's building manager since 2006, the building has failed its physical inspection for the first time in years, and just this month, tenants received a notice that the gas bill was not paid, a failure that creates needless dread during the winter season. Mr. Gluck is also reported to have numerous outstanding code violations on the Mitchell-Lama buildings that he has purchased in the last several years.

Schumer has been a leader in the fight to save Castleton Park beginning in April when he joined tenants and activists to announce that he would be urging HUD to reject any buyouts that would threaten the affordability of Castleton Park. Since that time, Schumer has written numerous letters, met with senior HUD officials and spoken with HUD Secretary Alphonso Jackson to urge HUD to maintain the affordable units on Staten Island, which has suffered from a housing crunch due to the population boom and rising real estate prices.

#       #       #

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ST. MARKS PLACE HOUSING COMPANY, INC.;  :
ST. MARKS PLACE ASSOCIATES; STELLAR CP  :
LP; and CASTLETON GP LLC,                :
                                         :
            Plaintiffs,          :
                                         :
    - v. -                           :
                                         :    Case No. 08-cv-0193/RBW
UNITED STATES DEPARTMENT OF HOUSING      :
AND URBAN DEVELOPMENT; and ROY BERNARDI, :
AS ACTING SECRETARY OF THE UNITED        :
STATES DEPARTMENT OF HOUSING AND         :
URBAN DEVELOPMENT,                       :
                                         :
            Defendants.          :
                                         :

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendants' motions to strike Plaintiffs' response to Defendants' motion to dismiss and to compel the return to Defendants of certain documents, the opposition thereto, the entire record herein:

IT IS HEREBY ORDERED that the Defendants' motions are DENIED.

Dated: _____, 2008

 

 

 

                        _____
                        Hon. Reggie B. Walton
                        United States District Judge