# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. MARKS PLACE HOUSING COMPANY, INC.; ST. MARKS PLACE ASSOCIATES; STELLAR CP LP; and CASTLETON GP LLC, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 1:08-cv-00193 (RBW) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ROY BERNARDI, AS ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, ) ) ) ) ) ) | |
| Defendants. ) ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL THE RETURN TO DEFENDANTS OF PRIVILEGED DOCUMENTS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................2

     I.     THE INTERNAL HUD MEMORANDUM IS SUBJECT TO THE
            DELIBERATIVE PROCESS PRIVILEGE .............................................................2

          A.     The Memorandum Is Predecisional .............................................................2

          B.     The Memorandum Is Deliberative .............................................................4

     II.    PLAINTIFFS' ASSERTED NEED FOR THE MEMORANDUM DOES
            NOT OUTWEIGH THE INTERESTS UNDERLYING THE PRIVILEGE ...........7

     III.   NO WAIVER OF THE DELIBERATIVE PROCESS PRIVILEGE
            HAS OCCURRED .................................................................................................9

CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

Am. Petroleum Inst. v. EPA, 846 F. Supp. 83 (D.D.C. 1994) ..........................................2

Calton v. Babbitt, 147 F. Supp. 2d 4 (D.D.C. 2001) ...................................................11

*Coastal States Gas. Corp. v. Dep't of Energy, 617 F.2d 854 (D.C. Cir. 1980) .................2, 3, 4, 7

Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571 (D.C. Cir. 1990) ...............................9

FTC v. Invention Submission Corp., 965 F.2d 1086 (D.C. Cir. 1992) ...........................11

In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997) ..............................................2

Martinez v. Dist. of Columbia, 241 F.R.D. 1 (D.D.C. 2006) ....................................3, 6

Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242 (D.C. Cir. 1977) ...............2

Norton v. S. Utah Wilderness Alliance ("SUWA"), 542 U.S. 55 (2004) ........................3

*Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598 (D.C. Cir. 2001) ..............................9

SafeCard Servs. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991) ..............................................11

Senate of P.R. v. Dep't of Justice, 823 F.2d 574 (D.C. Cir. 1987) ....................................2, 3

Shell Oil Co. v. IRS, 772 F. Supp. 202 (D. Del. 1991) ...................................................10

Stainback v. Sec'y of Navy, 520 F. Supp. 2d 181 (D.D.C. 2007) ..................................11

Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975) ...........................................................6

Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1 (D.D.C. 2004) ....................6

Wisconsin v. City of New York, 517 U.S. 1, 116 S. Ct. 1091 (1996) ..............................8

## STATUTES

5 U.S.C. § 551 ..........................................................................................................3

Administrative Procedure Act, 5 U.S.C. §§ 701-706 .....................................................4

## <u>INTRODUCTION</u>

Plaintiffs fail to justify their use, in documents filed with this Court, of what is clearly an internal HUD memorandum unintended for public disclosure and protected by the deliberative process privilege.  The government, in its submissions in support of its motion to strike, has met its burden of establishing that the memorandum is an internal predecisional deliberative document to which the privilege applies.  In response, plaintiffs make a series of assertions that are implausible, at best.  They first claim that the memorandum is not "predecisional" even though it was prepared over two months before the Secretary took the final agency action that is the subject of plaintiffs challenge, by informing plaintiff St. Marks that Section 250 of the National Housing Act applied to its mortgage and that prepayment of the mortgage was therefore denied.  They further claim that the memorandum is not "deliberative" even though it is a legal opinion expressing a position on the applicability of Section 250 of the National Housing Act to the St. Marks mortgage – the issue at the heart of the Secretary's final decision.  Finally, they fault the government for failing to discover the identity of a supposed "high-ranking HUD employee" who allegedly made an authorized disclosure of the internal memorandum, but they base this assertion on an affidavit of the alleged recipient of this disclosure, who claims to know who the official is but refuses to tell unless the government issues a subpoena.  Plaintiffs' attempt to entice the government into a game of hide-and-seek is insufficient to overcome the declaration of HUD's General Counsel stating that no authorized disclosure of the internal memorandum occurred except in response to an express request from Senator Schumer.

# ARGUMENT

## I. THE INTERNAL HUD MEMORANDUM IS SUBJECT TO THE DELIBERATIVE PROCESS PRIVILEGE

### A. The Memorandum Is Predecisional

The parties agree that a document must be both predecisional and deliberative in order to be shielded from disclosure by the deliberative process privilege. In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). However, the notion propounded by plaintiffs that the internal HUD memorandum is somehow not predecisional is difficult to understand. While plaintiffs suggest otherwise,[1] it is well settled that "'[a] document is "predecisional" if it precedes, in temporal sequence, the "decision" to which it relates.'" Am. Petroleum Inst. v. EPA, 846 F. Supp. 83, 88 (D.D.C. 1994) (quoting Senate of P.R. v. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (further quotation omitted). That is the case here because the internal memorandum is dated October 11, 2007, well before the December 20, 2007, decision by the Secretary not to approve prepayment of the St. Marks mortgage.

Plaintiffs' misguided attempt to analogize the internal HUD memorandum to the documents at issue in Coastal States Gas. Corp. v. Dep't of Energy, 617 F.2d 854 (D.C. Cir. 1980), should be discounted  The court in Coastal States held that those documents did not

---

[1]Plaintiffs observe that "HUD seems to be claiming that the HUD OGC Memo is predecisional simply because it was prepared prior to the Secretary's determination." Pl. Opp. to Mot. to Strike ("Pl. Opp.") at 11.  That is indeed what defendants claim because, as explained below, that is what is required for a document to qualify as "predecisional."  The language plaintiffs quote, that "[p]redecisional materials are not exempt merely because they are predecisional," merely states that material protected by the deliberative process privilege must be not only predecisional but also deliberative.  See Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 257 (D.C. Cir. 1977).  Plaintiffs' brief fails to maintain a clear distinction between the dual requirements that a document be both "predecisional" and "deliberative"; however, the two requirements are separate and are best analyzed as such.

qualify for protection under the deliberative process privilege because they were not part of a "clear 'process' leading to a final decision on the issue," but instead were "simply straightforward explanations of agency regulations in specific factual situations." Id. at 868. The distinguishing feature of the Coastal States documents, though, was not the timing of their issuance, but the fact that they did not relate to an agency decision. See id. ("No 'decision' is being made or 'policy' being considered[.]"); see also Martinez v. Dist. of Columbia, 241 F.R.D. 1, 3 (D.D.C. 2006) (recognizing that, in order to deem a document predecisional, "'a court must be able to pinpoint an agency decision or policy to which the document contributed'" (quoting Senate of the Commonwealth of P.R., 823 F.2d at 585 (further quotation omitted)).

The context in which the Coastal States documents were created involved an ongoing process of "compliance review" audits, in which auditors sought guidance on how to interpret agency regulations based on "real or hypothetical" fact patterns. Id. at 859. It was not a situation where the agency was considering whether to issue an "agency rule, order, license, sanction, relief," or anything else that would qualify as a final agency action. See 5 U.S.C. § 551(13); cf. Norton v. S. Utah Wilderness Alliance ("SUWA"), 542 U.S. 55, 62 (2004). The documents "were not suggestions or recommendations as to what agency policy should be," they were "not advice to a superior, nor [we]re they suggested dispositions of a case," nor were they "one step of an established adjudicatory process." Coastal States, 617 F.2d at 868. Instead, they were part of "an ongoing audit process." Id. (emphasis added).

Here, in contrast, the internal HUD memorandum was prepared in connection with a specific question before the Secretary – how to respond to St. Marks' notice of intent to prepay its mortgage. The memorandum was prepared prior to the decision of the Secretary to deny

prepayment.  It was prepared by a subordinate within the agency and set forth the legal opinion of

a component of the agency's Office of General Counsel regarding what action it believed could

be taken in response to St. Marks' notice, in light of the specific facts at issue.  The author of the

memorandum presented the recipient with certain options regarding what actions could be taken,

in light of the author's assessments.[2]  The Secretary's ultimate response to St. Marks' notice was

a final agency action, based upon which plaintiffs filed the instant suit under the Administrative

Procedure Act, 5 U.S.C. §§ 701-706.  The memorandum was therefore unquestionably

"predecisional."

      **B.**     **The Memorandum Is Deliberative**

      The internal HUD memorandum also satisfies the second requirement for protection by

the deliberative process privilege – that it be "deliberative" in nature.  In order to qualify as

"deliberative," a document must  "reflect[] the give-and-take of the consultative process."

Coastal States, 617 F.2d at 866.  Plaintiffs contend that the memorandum at issue does not do

this but instead "contains the law itself – namely, that when a note contains a prepayment

restriction inconsistent with HUD regulations in effect at the time of the note's endorsement by

HUD, the purported restriction is invalid."  Pl. Opp. at 10.  They therefore accuse HUD of

"attempting to shield from disclosure its own body of 'secret law.'"  Id.  This notion is

preposterous.

      The legal principle that, according to plaintiffs, HUD is attempting to hide by asserting

privilege here – that contractual provisions in a mortgage note are invalid if inconsistent with

---

      [2]Defendants' description here is necessarily in general terms to avoid quoting or
describing privileged material.

HUD regulations – is no secret.  Indeed, plaintiffs' briefing in this case cites a publicly-available 1995 HUD legal opinion as espousing this very rule.  See Pl. Opp. to Defs.' Mot. to Dismiss at 15-16; Pl. Opp. to Defs.' Mot. to Strike at 13.  However, the fact that the internal HUD memorandum cites established agency policy has no bearing on its deliberative nature.  The issue under deliberation in the memorandum was not the established policy itself but whether that policy applied to the St. Marks mortgage note.  That question required the author of the memorandum to consider whether the provisions in that specific mortgage note were in fact inconsistent with the HUD regulations in effect at the time the mortgage note was signed.  That in turn required the author to consider the proper interpretation of the HUD regulations in effect in 1977.  On these particular issues, the author of the memorandum made clear that she was expressing a "view" and a "legal position" of her office.  The author noted that these issues were complicated by "the unique nature of this transaction."  This discussion was deliberative because it provided advice to someone higher up in the decisionmaking chain concerning how to interpret this particular mortgage note in light of particular regulations, and what the options were, based on that interpretation.

Plaintiffs next challenge the deliberative nature of the memorandum by asserting that the author of the memorandum expressed her position in an "authoritative tone," Pl. Opp. at 9, and that the opinions stated do not appear "subjective or personal," id. at 7.  However, there is nothing unusual about using such a tone when providing legal advice.  That alone cannot determine whether a document is deliberative.  Internal legal opinions that consider and make recommendations regarding specific agency actions before any action is taken qualify as deliberative because they are prepared for the purpose of, and are considered by the

decisionmaker in the course of, the decisionmaking process.  See Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 11 (D.D.C. 2004) (characterizing information that "'makes recommendations or expresses opinions on legal or policy matters'" as "'a direct part of the deliberative process'" (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975))).  It is not whether the author of an opinion speaks in an authoritative tone, but the nature of the actual "decision making authority vested" in the author that is relevant.  See id. (internal quotation omitted).  Here there is no question that the author of the internal HUD memorandum was not the person vested with authority to make the final decision regarding HUD's response to St. Marks' notice of intent to prepay.

HUD's General Counsel has explained the role this document played within the context of the Secretary's decisionmaking process, and has thus met the agency's burden.  Cf. Martinez, 241 F.R.D. at 3-4.  As the General Counsel has described, the document "conveys a legal opinion" of one component of the Office of General Counsel regarding issues relevant to the Secretary's formulation of a response to St. Marks' notice of intent to prepay.  Couch Decl. ¶ 6 (attached to defendants' opening brief in support of motion to strike).  The opinion addresses "the analysis and interpretation of [the] contracts and regulations" that are involved and that therefore bear on the Secretary's decision.  Id. ¶ 7.  HUD's Office of General Counsel maintains that disclosing a document such as this one would interfere with the ability of HUD staff "to prepare and candidly discuss various positions and interpretations that might be relevant to an ultimate conclusion on how to respond to a notice of prepayment," and would "discourag[e] the General Counsel and other HUD officials from seeking written legal opinions from various offices when the potential for litigation is recognized."  Id. ¶ 13.  Legal interpretations can differ,

and interpretations can evolve during the process of considering an issue. However, exposing the

fact that one component of HUD's Office of General Counsel provided an interpretation of a

contract and regulations that differs from the Secretary's ultimate interpretation and is in conflict

with the Secretary's ultimate decision can only cause confusion and may mislead the public

concerning the reasons for the agency's final action. That is exactly the result that the

deliberative process privilege is meant to prevent. Coastal States, 617 F.2d at 866.[3]

## II.     PLAINTIFFS' ASSERTED NEED FOR THE MEMORANDUM DOES NOT OUTWEIGH THE INTERESTS UNDERLYING THE PRIVILEGE

Plaintiffs most starkly reveal the inconsistencies in their position when they argue that

HUD has no genuine need to protect the internal HUD memorandum from disclosure because the

memorandum "simply summarizes *existing* HUD agency law and policies which were adopted

long ago," and cite a 1995 publicly-available HUD legal opinion as conveying the very same law

and policies. Pl. Opp. at 13. If that were true, plaintiffs, by their own admission, would have no

need for this memorandum because the same principles are available elsewhere (and are thus not

"secret"). It is not true, however. As explained above, the internal HUD memorandum provides

recommendations specific to the St. Marks mortgage. Yet, contrary to plaintiffs' assertions,

these predecisional recommendations have no bearing on the Court's analysis of plaintiffs'

claims. As explained in defendants' initial memorandum, the only issue raised in this case

_____

[3]Plaintiffs call on HUD to prove that the internal HUD memorandum represents only one among a number of legal views presented to the Secretary. Pl. Opp. at 12. They apparently would require HUD to come forward with more documents protected by the deliberative process privilege, or produce a "privilege log" of such documents, in order to establish that the privilege applies to this document. Nothing in the case law supports imposing such a burden on an agency. Rather, an agency's burden is satisfied by providing a declaration that describes how the document at issue contributed to the decisionmaker's deliberations. Coastal States, 617 F.2d at 868. HUD has done that here through the declaration of General Counsel Couch.

concerns whether the Secretary acted properly in concluding that Section 250 applied to the St.

Marks mortgage, based on his interpretation of the prepayment restriction in the St. Marks

mortgage note as consistent with the applicable HUD regulations.  That legal question is

unaffected by the fact that one of his subordinates expressed a differing view regarding the

correct legal interpretation.  To the extent the relevant HUD regulation is unambiguous, there

will be no need to consider anyone's interpretation.  To the extent the regulation is ambiguous,

only the Secretary's interpretation is entitled to deference, and the opinions of his subordinates

are simply irrelevant.  Wisconsin v. City of New York, 517 U.S. 1, 23, 116 S. Ct. 1091 (1996).[4]

---

[4]Plaintiffs present, as another purportedly relevant fact, HUD's rejection of their offer to withdraw their current filings and instead file the internal HUD memorandum with the Court under seal.  Plaintiffs inaccurately state that their counsel made this offer before the government filed its motion to strike.  In fact, plaintiffs' counsel did not present this offer until after reading the government's motion, the day after it was filed, and defendants' counsel responded to plaintiffs' suggestion by e-mail later that day, May 15.  The May 14 e-mail from defendants' counsel that plaintiffs attach to their opposition brief as Exhibit D to the Meister Declaration was not a response to the offer plaintiffs describe in their brief and does not contain the language plaintiffs quote.  See Pl. Opp. at 14.  Instead, that e-mail reiterated to plaintiffs' counsel defendants' previously-stated position that defendants do not believe privilege has been waived.  Id.  In any case, the government adheres to its position that allowing a litigant to circumvent the protections of the deliberative process privilege by obtaining internal agency documents through unauthorized disclosures and then filing them under seal with the court in their case – where the very decision that the predecisional document addressed is under consideration – undermines the interests that the privilege is meant to serve.  Plaintiffs clearly seek to use this document as a means of undermining the Court's, and the public's, confidence in the Secretary's decision regarding prepayment requirements in the St. Marks mortgage.  The mere fact that different views were presented to the Secretary prior to his final decision should have no such effect; to the contrary, confidence in the Secretary's decision should be stronger with the knowledge that alternative interpretations were considered and rejected.  Nevertheless, the privilege is meant to eliminate any potential for confusion that such contradictory interpretations can cause when freely allowed to enter the public domain, and to prevent any chill on internal deliberations that might result if it were the case that any interim advice, if not followed by the decisionmaker, could be used after the final decision to cast doubt on the legitimacy of the agency's action.

III.    **NO WAIVER OF THE DELIBERATIVE PROCESS PRIVILEGE HAS OCCURRED**

Plaintiffs suggest that HUD has waived the deliberative process privilege by disclosing

the internal HUD memorandum to Senator Charles Schumer, at his request, and – according to

plaintiffs' allegation – by disclosing the memorandum to an attorney associated with plaintiffs.

Both suggestions are meritless.  The government has already explained, in its opening brief in

support of its motion to strike, that an agency's disclosure of a privileged document to a member

of Congress does not waive the deliberative process privilege.  See Rockwell Int'l Corp. v. U.S.

Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001).  Plaintiffs seek to evade this clear rule by

citing Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571, 575 (D.C. Cir. 1990).  However, as

the D.C. Circuit recognized in Rockwell, Dow Jones concerned a document that was prepared

"specifically to assist Congress," and thus was not prepared as part of the deliberate

decisionmaking process of any agency.  Rockwell, 235 F.3d at 604.  The holding of Dow Jones

does not apply to documents, such as the internal HUD memorandum at issue here, "created as

part of [an agency]'s deliberative processes."  Id.  Moreover, the proposition that plaintiffs

attribute to the Dow Jones opinion – that disclosure to Congress of a document otherwise

protected by the deliberative process privilege results in a waiver of the privilege if the disclosure

is made after the agency has reached its decision – is, as far as defendants can tell, nowhere to be

found in that decision.

Plaintiffs also make the curious argument that – despite the fact that the Secretary did not

inform St. Marks of his decision regarding prepayment until December 20, 2007, and despite the

fact that the Secretary's decision denied prepayment – the Secretary had already made a final

- 9 -

decision to <u>allow</u> prepayment before the internal HUD memorandum was given to Senator

Schumer.  Pl. Opp. at 18.  Even if it were the case that the Secretary was inclined to allow

prepayment at one point – which is not a fact that can be established by reference to rumors

reported in the media or the opinion of a Legal Aid attorney – there cannot be two diametrically

opposed final decisions on the same issue.  The fact that the Secretary ultimately denied

prepayment is irrefutable evidence that any contrary inclination he might have had prior to that

time was not his final decision.[5]

Plaintiffs also assert privilege was waived because a "high-ranking HUD employee

provided Robert Harding, an attorney representing Plaintiffs, with a copy" of the internal HUD

memorandum.  Pl. Opp. at 15.  Plaintiffs suggest that this disclosure must have been authorized

and that the government bears the burden of establishing that it was not.  To the contrary, while

the government bears the initial burden of establishing that a document meets the predecisional

and deliberative requirements of the privilege and that the privilege has been validly asserted, it

is the plaintiff that bears the burden of proving that the privilege has been waived through an

authorized disclosure.  <u>Cf.</u> <u>Shell Oil Co. v. IRS</u>, 772 F. Supp. 202, 208  (D. Del. 1991) ("the

plaintiff . . .  must prove that the disclosure was authorized").

The reasons underlying this allocation of burdens are apparent here.  It would make no

_____

[5]Plaintiffs emphasize that they are not charging Senator Schumer with any inappropriate
behavior in regard to the St. Marks mortgage prepayment issue.  Pl. Opp. at 19 n.5.  Evidently,
they simply object to the possibility that the Senator may have acted as a catalyst that caused the
Secretary to look again at the interpretation of the St. Marks mortgage and relevant HUD
regulations, which ultimately resulted in the Secretary's refusal to approve prepayment.  As
mentioned above, however, there is nothing untoward about reevaluating an opinion regarding
the legal interpretation of contracts and regulations, particularly where the reevaluation occurs
before any final decision is reached.

- 10 -

sense to require the government to prove a negative – that no authorized disclosure occurred – beyond its good faith representation that such is the case. Here, HUD's General Counsel has already declared that no authorized disclosure occurred, and his statement to that effect, under penalty of perjury, is – at the very least – entitled to a presumption of validity. SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (recognizing agency affidavit is entitled to presumption of good faith in FOIA context); Stainback v. Sec'y of Navy, 520 F. Supp. 2d 181, 188 (D.D.C. 2007) (agency's certification of an administrative record is "entitled to 'a presumption of administrative regularity and good faith'" (quoting FTC v. Invention Submission Corp., 965 F.2d 1086, 1091 (D.C. Cir. 1992))); Calton v. Babbitt, 147 F. Supp. 2d 4, 8 (D.D.C. 2001) ("Absent a showing of bad faith, representations made by an administrative agency are entitled to a presumption of good faith.").

On the other hand, plaintiffs claim to have in their possession the information necessary to show that the disclosure was authorized, but they refuse to share this information because, they assert, it is the government's burden to acquire it, through discovery if necessary. Pl. Opp. at 16. Yet their assertion that a "high-ranking HUD employee" disclosed the memorandum to one of their attorneys, id., loses a great deal of credibility by plaintiffs' refusal to provide the name of this individual. If plaintiffs were to identify this supposed high-ranking employee, the government could then inquire whether a disclosure actually occurred, and if it did, whether the disclosure was authorized. However, because plaintiffs have refused to provide such an identification, the government cannot be expected to go beyond the assertions already made in

the General Counsel's declaration.[6]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court strike plaintiffs'

brief in opposition to defendants' Motion to Dismiss, including its quotation of an internal HUD

memorandum and its attachment of that memorandum as Exhibit C to the Declaration of Stephen

B. Meister, order that all copies of the memorandum in plaintiffs' possession be returned to

defendants, and order plaintiffs to file another brief in opposition to defendants' Motion to

Dismiss that omits any quotation of or reference to the internal memorandum.


Dated: June 6, 2008                              Respectfully submitted,

                                                 GREGORY G. KATSAS
                                                 Acting Assistant Attorney General
                                                 JEFFREY A. TAYLOR
                                                 United States Attorney

                                                 /s/ Kathryn L. Wyer
                                                 MICHAEL SITCOV
                                                 KATHRYN L. WYER
                                                 U.S. Department of Justice, Civil Division
                                                 20 Massachusetts Ave., NW
                                                 Washington, D.C.  20530
                                                 Telephone: (202) 616-8475 / Fax: (202) 616-8470
                                                 kathryn.wyer@usdoj.gov
                                                 *Attorneys for Defendants*

---

[6]Contrary to plaintiffs' final assertion, the fact that General Counsel Couch did not invoke privilege until discovering that plaintiffs had publicly filed the internal HUD memorandum in this case has no bearing on the memorandum's privileged status.  The invocation of privilege recognizes the privileged status of a document, but that status does not suddenly begin with the invocation of the privilege.  Agencies typically do not invoke privilege until an outside party calls that status into question.