UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ST. MARK'S PLACE HOUSING         :
COMPANY, INC.; ST. MARK'S PLACE  :
ASSOCIATES; STELLAR CP LP; and   :
CASTLETON GP LLC,                :
                                 :
    Plaintiffs,                  :
                                 :
    v.                           :  Case No. 1:08-cv-00193-RBW
                                 :
UNITED STATES DEPARTMENT OF      :
HOUSING AND URBAN                :
DEVELOPMENT and ROY BERNARDI,    :
AS ACTING SECRETARY OF THE       :
UNITED STATES DEPARTMENT OF      :
HOUSING AND URBAN                :
DEVELOPMENT                      :
                                 :
    Defendants.                  :
_____  :

**Memorandum Opinion**

The plaintiffs bring this case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06 (2006), seeking a declaratory judgment, Complaint ("Compl.") ¶¶ 48-56, injunctive relief, id. ¶¶ 57-58, and an order of mandamus, id. ¶¶ 59-64.  Currently before the Court is the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' Motion to Dismiss.[1]  For the reasons set forth below, the Court will grant the defendant's motion.

---

[1] The following papers have been submitted in connection with this motion: (1) a Memorandum in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") and (2) the Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n").

# I. Background

**A. Underlying Facts**

The plaintiffs in this lawsuit are the intended buyer and seller on a contract to transfer ownership interest in a multifamily housing project in Staten Island, New York, known as the Castleton Park Apartments (the "Apartments"). Compl. ¶¶ 4, 11. The intended sellers, St. Marks Place Housing Co. ("The Housing Company") and St. Marks Place Associates, are respectively a limited profit housing company organized under the Private Housing Finance Law of the State of New York, id. ¶ 4, and a limited partnership organized under the laws of the State of New York, id. ¶ 5. The Housing Company is the nominal owner of the Apartments and currently holds title to the Apartments for the benefit of St. Marks Place Associates. Id. ¶ 4.

The Housing Company purchased the Apartments in 1974 with a non-insured mortgage loan of $19,715,000 made by the New York State Housing Finance Agency ("NY Finance Agency"). Id. ¶ 16. On October 13, 1977, the mortgage was refinanced and divided into a "HUD-insured Section 236-assisted" senior mortgage of $17,629,100 ("Mortgage Note"), and a "non-insured Section 236-assisted" junior mortgage of $3,360,900, under the authority of Section 207 of the National Housing Act ("NHA"), 12 U.S.C. 1713 (2006), and pursuant to Section 223(f) of the NHA, 12 U.S.C. 1715n(f) and 24 CFR § 207.32(a)(k) (1977). Id. ¶¶ 18-19; Pls.' Opp'n, Exhibit ("Ex.") B ("Mortgage Note" or "Note"). The first page of the Mortgage Note contains the following paragraph:

> Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day or any month prior to maturity upon at least thirty (30) days' prior written notice to the holder.**  If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium

2

charge required by the applicable Regulations.

Id. The double asterisk at the end of the first sentence references a footnote that reads: "**Subject to the prior approval of the Secretary of Housing and Urban Development." Id.[2]

In May 2006, the shareholders of the Housing Company and St. Marks Associates (identified collectively in the parties' filings as the "St. Marks Plaintiffs"), jointly as the intended sellers, entered into a contract with Stellar CP LP and Stellar Castleton GP LLC (identified collectively in the parties' filings as the "Stellar Plaintiffs"), jointly as the intended buyers, in which the St. Marks Plaintiffs agreed to sell their beneficial interest in the Apartments and all of the outstanding stock in the Housing Company to the Stellar Plaintiffs. Compl. ¶ 11.

The contract was drafted so the Apartments could be withdrawn from the "Mitchell-Lama" Program, a program authorized under Article II of the New York State Private Housing Finance Law (the "PHF Law"). Id. ¶ 12. The PHF Law "encourage[s] [private enterprises] to invest in companies regulated by law . . . and engaged in providing . . . housing facilities . . . for families or persons of low income." N.Y. Priv. Hous. Fin. Law § 11 (McKinney 1987). To withdraw from the Mitchell-Lama program, a participant must extinguish any government subsidized or assisted mortgage debts and dissolve or reconstitute the limited profit housing company that owns the housing development. Id. § 35(2)-(3); Compl. ¶ 15.

In four separate letters dated December 1, 2006, March 30, 2007, July 31, 2007, and November 30, 2007, the plaintiffs attempted to notify the defendants of their intention to prepay the Mortgage Note. Compl. ¶ 32. At the request of the defendants, the plaintiffs provided a written summary explaining why they believed the defendants' consent to prepayment was not

---

[2]Following the word "Regulations", which appears at the end of the second sentence of the same paragraph, is the following language: "See 'Attachment A', Paragraph 2 incorporated herein by reference and made a part hereof." Compl. ¶¶ 18-19; Pls.' Opp'n, Exhibit ("Ex.") B ("Mortgage Note").

required. Id. ¶ 33. According to the plaintiffs, in June 2007, HUD's Office of the General Counsel advised HUD's Secretary's office that Section 250(a) of the NHA, which subjects mortgage prepayment to restrictions determined by the defendants,[3] did not apply to the prepayment restriction contained in the Mortgage Note. Id. ¶ 34.  In September 2007, the plaintiffs' counsel met with HUD's General Counsel to discuss the plaintiffs' intent to prepay the Mortgage Note and argue why Section 250(a) did not apply to their Note. Id. ¶ 35. On October 11, 2007, HUD's Office of the General Counsel again allegedly advised HUD's Secretary's office that it had concluded that Section 250(a) was not applicable to the plaintiffs' Mortgage Note. Id. ¶ 36; Pls.' Opp'n at 8 & Ex. C (Memorandum from Millicent B. Potts to Beverly J. Miller).  After HUD's Office of the General Counsel allegedly advised the Secretary's office for the second time about the inapplicability of the prepayment requirement, the Secretary met with New York Senator Charles Schumer, who purportedly conveyed to the Secretary his belief that the Secretary's approval was required and that Section 250(a) applied to the plaintiffs' Mortgage

---

[3]Section 250(a) of the NHA, codified as amended at 12 U.S.C. § 1715z-15(a), states in pertinent part:

> During any period in which an owner of a multifamily rental housing project is required to obtain the approval of the Secretary for prepayment of the mortgage, the Secretary shall not accept an offer to prepay the mortgage on such project . . . unless--
>
> (1) the Secretary has determined that such project is no longer meeting a need for rental housing for lower income families in the area;
>
> (2) the Secretary (A) has determined that the tenants have been notified by the owner's request for approval of a prepayment, (B) has provided the tenants with an opportunity to comment on the owner's request; and (C) has taken such comments into consideration; and
>
> (3) the Secretary has ensured that there is a plan for providing relocation assistance for adequate, comparable housing for any lower income tenant who will be displaced as a result of the prepayment and withdrawal of the project from the program.

Note. Compl. ¶ 37; Pls.' Opp'n at 8-9 & Ex. D (Press Release from the Office of Senator Charles Schumer (D-NY)) at 1.

On December 20, 2007, the defendants notified the Housing Company that because prepayment of the Mortgage Note was conditioned on the approval of the Secretary, the plaintiffs' prepayment was "subject to the restrictions of Section 250(a) of the NHA," and their prepayment request had been denied because the intended prepayment had not met the restrictions of this statutory provision. Compl. ¶ 39; Defs.' Mem. at 9 & Ex. A (Letter from Teresa M. Bainton to Jean-Pierre Vaganay). The plaintiffs were advised that the Section 250(a) restrictions required: (1) that 150 days notice must be given to the residents of the Apartments, (2) that the plaintiffs "must provide a minimum of $15,000 per unit in repairs/rehabilitation or replace two or more major building components" with funds in escrow at the time of prepayment approval, and (3) that the plaintiffs would have to "execute a rental use agreement that will be recorded in first lien position on the property until what would have been the maturity date of the first mortgage, November 1, 2017." Defs.' Mem. at 9 & Ex. A (Letter from Teresa M. Bainton to Jean-Pierre Vaganay). Not agreeing with the defendants' positions, six weeks later, on February 1, 2005, the plaintiffs filed this lawsuit.

**B. The Mitchell-Lama Program**

In 1955, the New York State Legislature enacted The Limited-Profit Housing Companies Act, also known as the Mitchell-Lama Program. See N.Y. Priv. Hous. Fin. Law § 11. The program was designed to encourage the development of affordable housing for low to middle income tenants. Id. By offering financial incentives to developers, including the option to prepay mortgages, the New York State Legislature hoped to encourage developers to build rental or co-op apartments in spite of the lengthy time constraints on when such developers could sell

5

their property. See generally id. §§ 11-37.  The New York State Legislature contemplated that projects developed and operated under the Mitchell-Lama Program might be established in conjunction with assistance from the Federal government.  Id. § 11-a.  Here, the Federal government became associated with the property at issue as a result of insuring the refinancing of the Mortgage Note under the authority of the National Housing Act.

### C. The National Housing Act and the Funding of the Housing Company Loan

The National Housing Act was enacted by Congress in 1934 to address its concern about the declining national stock of affordable housing. Pub. L. No. 73-479, § 1, 48 Stat. 1246 (1934). In 1961, Congress amended the Act to "enable private enterprise to participate to the maximum extent in meeting the housing needs of moderate-income families." S. Rep. No. 87-281, at 4 (1961), as reprinted in 1961 U.S.C.C.A.N. 1923, 1926. Section 236 of the National Housing Act, as amended in 1968, authorizes the Federal government to subsidize interest payments as a financial incentive to private investors to create additional low income housing.  Pub. L. No. 90-448, § 201, 82 Stat. 476, 498-501 (1968); see Cienega Gardens v. United States, 503 F.3d 1266, 1270 (Fed. Cir. 2007).

The Housing Company

> was organized pursuant to the Mitchell-Lama law.  In 1974, St. Marks obtained a noninsured mortgage loan from the NYSHFA for the development of what became the Castleton Park Apartments, an affordable housing project located in Staten Island, New York.  This loan, of approximately $20 million, was subsidized by HUD under Section 236 of the NHA, 12 U.S.C. § 1715z-1.
> In 1977, the St. Marks loan was refinanced, and at the same time was divided into two parts.  The first part consisted of a senior mortgage loan, in an original amount of $17,629,100, insured by HUD under NHA Section 207, 12 U.S.C. § 1713(b), pursuant to NHA Section 223(f), 12 U.S.C. § 1715n(f).  The second part of the refinanced loan consists of a noninsured subordinate mortgage loan in the amount of $3,360,900.

Defs.' Mem. at 7-8.

## II. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged in the complaint. Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s]." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). A 12(b)(6) motion should be granted and claims should be dismissed under this rule if the plaintiff does not provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## III. Analysis

The defendants seek dismissal of the plaintiffs' complaint with prejudice for failure to state a claim upon which relief can be granted under the APA. Defs.' Mem. at 1. Although the defendants have conceded that their rejection of the plaintiffs' intent to prepay the Mortgage Note constitutes final agency action subject to judicial review, they move to dismiss on the grounds that the plaintiffs have failed to state a claim under the APA because while the HUD

regulations in effect at the time the Mortgage Note was executed only required mortgagors and mortgagees to include a provision in their agreement that allowed prepayment, nothing precluded the defendants from making the Secretary's approval a prerequisite for such prepayment. Id. at 2.

Whether the plaintiffs have stated "claims upon which relief can be granted depends in part on whether there is a cause of action [permitting the plaintiffs] to invoke the power of the court to redress the violations of law that [they] claim [HUD] has committed." Trudeau, 456 F.3d at 188.  The answer to this question "also depends on whether the allegations of [the plaintiffs'] complaint are legally sufficient to state the violations [they] claim." Id.

### A. The Administrative Procedure Act

With respect to whether there is a cause of action that permits the plaintiffs to invoke the power of this Court, the defendants do not deny that the plaintiffs have a cause of action available to them, but argue that the plaintiffs' "three causes of action" can only be brought as one claim under the APA. Defs.' Mem. at 11.  The Court therefore need not address the defendants' challenge to the plaintiffs' pursuit of the three separate claims.

The APA entitles "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to judicial relief. 5 U.S.C. § 702.  If no designated form for seeking judicial review is provided for by statute, "any applicable form of legal action including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction" are available. § 703.  Thus, regardless of how the relief is classified, when appropriate, a court may "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . .," § 706(2)(A), which is the relief the plaintiff is seeking.

### B. Prepayment Privilege

Both parties' arguments concerning the plaintiffs' prepayment privilege rights rely on the proposition that certain language in the several documents pertinent to the issue is clear and unambiguous. The defendants focus on the language of the Mortgage Note first and the HUD regulations second. They contend that the footnote referenced earlier and the "plain language of the Mortgage Note clearly impose [the] requirement" that prepayment be approved by the Secretary. Defs.' Mem. at 13. The defendants also argue that nothing in the version of 24 C.F.R. § 207.14(a) applicable to this case expressly mandated that prepayment be allowed without the Secretary's approval, noting that "the regulation is simply silent on the matter." Id. at 2, 17. Moreover, according to the defendants, because nothing in the plain language of the Mortgage Note, Attachment A, or the HUD regulations in effect at the time the Mortgage Note was executed restrict the Secretary's discretion to apply the restrictions of Section 250(a) to prepayment of a mortgage, the Secretary's decision to apply Section 250 was reasonable and should be given substantial deference. Id. at 1, 11-13.

In opposition, the plaintiffs also focus on the HUD regulations in effect at the time the Mortgage Note was executed. They contend "that there was no statutory, regulatory or administrative basis" for the parties to the Mortgage Note or the defendants to include a footnote subjecting prepayment to the approval of the Secretary, and in fact the prepayment approval clause was directly contrary to and inconsistent with the explicit language of 24 C.F.R. § 207.14(a) and 24 C.F.R. 207.32(a), rendering the footnote void. Compl. ¶¶ 26, 27; Pls.' Opp'n at 14. The plaintiffs argue that Section 207.14(a) is clear and unambiguous, and therefore the Secretary's interpretation is not entitled to any deference. Pls.' Opp'n at 19. As to the defendants' assertion that the plain language in the Mortgage Note does not restrict the

Secretary's discretion to apply Section 250(a), the plaintiffs respond that the express terms of Attachment A require only that the defendants' consent be obtained for specified partial prepayments based on rent increases achieved by April 13, 1979, but that no such consent is necessary for full or substantial partial prepayments. Compl. ¶ 46; Pls.' Opp'n 23-24.

Neither party disputes that the applicable version of 24 C.F.R. § 207.14(a) required that a prepayment provision be included in the Mortgage Note, nor do they dispute that the Mortgage Note that is the subject of the case included a footnote requiring that the Secretary's approval be obtained prior to prepayment. Defs.' Mem. at 14-15; Pls.' Opp'n at 5, 13. Instead, the parties dispute whether the footnote is in direct conflict with the regulations in place when the Mortgage Note was executed. Defs.' Mem. at 15; Pls.' Opp'n at 14. The defendants argue that no such conflict exists, while the plaintiffs contend that there is a conflict, and therefore the footnote must be rendered void.

When an agency is charged with administering a statute, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) governs the review of the agency's interpretation of the statute. Bell Atl. Tel. Cos. v. FCC, 131 F.3d 1044, 1047 (D.C. Cir. 1997). The first inquiry to make under Chevron

> is ... whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the Court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43; see also Bell Atl., 131 F.3d at 1047. In assessing whether an

agency's construction of a statute is permissible, the court must look to traditional tools of statutory construction, including examining of "the statute's text, its legislative history, and structure, as well as its purpose" Bell Atl., 131 F.3d at 1047 (citation omitted). Deference to the agency's interpretation is not appropriate if it conflicts with the clear expressed intention of Congress on the question, "but if the statute is silent or ambiguous with respect to the issue, a permissible agency interpretation of the statute merits judicial deference." Id.

In the case at hand, it is a statutory regulation that is at issue, and in such situations the analysis for the Court is slightly different. An agency's interpretation of its own regulations "must be afforded substantial deference and upheld unless 'plainly erroneous or inconsistent with the regulation.'" Air Transp. Ass'n of Am., Inc. v. FAA, 291 F.3d 49, 53 (D.C. Cir. 2002) (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)). However, if an "alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation," then the regulation itself and not the agency interpretation is controlling. Id.

Upon examination of the Mortgage Note itself, it is clear that the Note's plain language conditions prepayment on the approval of the Secretary of HUD. The Court reaches this conclusion because the footnote in the Note, which contains the language requiring Secretary approval, immediately follows the verbatim language of Section 207.14(a)'s prepayment privilege, and contrary to the plaintiffs' assertions, appears to be unrelated to the sentences that follow it or the language in Attachment A.

Turning to the HUD regulations in effect in 1977, the Court is inclined to agree that Section 207.14(a) did not grant HUD the authority to alter a prepayment privilege by requiring the Secretary's approval. The 1977 version of Section 207.14(a) states: "The mortgage shall

contain a provision permitting the mortgagor to prepay the mortgage in whole or in part upon any interest payment date after giving to the mortgagee 30 days' notice in writing in advance of its intention to so prepay." 24 C.F.R. § 207.14(a) (1977). The regulation is therefore unambiguous on its face concerning the right to prepay. The Court therefore reads the regulation as requiring mortgages, at that time, to include a prepayment provision. However, the defendants are correct in pointing out that the regulation is "silent on the matter" of whether the Secretary may condition such prepayment upon his prior approval. Defs.' Mem. at 17. Thus, the Court's inquiry becomes "whether the agency's [determination that the Mortgage Note's footnote is enforceable] is based on a permissible construction of the [regulation]." Chevron, 467 U.S. at 843. The Court finds the Supreme Court's reasoning in Christensen v. Harris County, 529 U.S. 576, 588 (2000) controls the Court's resolution of the issue.

In Christensen, employees of a county's sheriff department brought a lawsuit alleging that the county's mandatory policy that employees schedule time off to reduce the county's liability for accrued time violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207 (2006). Christensen, 529 U.S. at 578. The county argued, and the plaintiffs conceded, that nothing in the "FLSA expressly prohibit[ed] [the county's] practice...." Id. at 582. Thus, based on the Supreme Court's reading of the controlling provision of the FLSA and "nearby provisions of the FLSA that reflect a similar concern for ensuring that employees receive some timely benefit for overtime work" and the regulation implementing the controlling provision, the Christensen Court found that "[b]ecause the statute [was] silent on [the] issue and because [the policy] [was] entirely compatible with [the statute and the regulation], petitioners [could not] . . . prove that Harris County ha[d] violated [the statute or the regulation]. Id. at 585.

Like the Supreme Court in Christensen, this Court finds that Section 207.14(a) "is more

properly read as a minimal guarantee that a [mortgagee] will be able to [prepay a mortgage] . . .," but not a guarantee that such right will be without conditions. Id. at 583. "In other words, viewed in the context of the overall statutory scheme, [Section 207.14(a)] is better read not as setting forth the exclusive [unfettered right of a mortgagee to prepay a covered mortgage], but as setting up a safeguard to ensure that a[]" mortgagee will have the option to prepay a mortgage, albeit with or without prerequisites. Id. Thus, the Court finds that nothing in Section 207.14(a) precluded the parties to the Mortgage Note from conditioning prepayment upon the approval of the Secretary. The regulations implementing Section 236 also provided that all mortgages under the program shall contain a clause allowing for prepayment, however, Congress said nothing about the defendants being precluded from attaching additional requirements to such prepayments. See 24 C.F.R. § 207.14(a). Furthermore, this conclusion is consistent with the "broad discretion in implementing [statutes]" accorded to agencies like HUD. Chevron, 467 U.S. at 862. Thus, the footnote in the Mortgage Note is valid and not in direct conflict with the regulations in place when the Note was executed.

       The defendants further argue that because the Secretary determined that the Mortgage Note footnote requires that prepayment of the Note be approved by the Secretary, the Mortgage Note's prepayment option falls under the purview jurisdiction of Section 250 of the NHA, codified at 12 U.S.C. § 1715z-15(a). The Court must determine whether this action by the Secretary constitutes a permissible interpretation of the statute. According to the defendants, "Section 250 generally restricts the Secretary's ability to approve prepayment of mortgages where the Secretary's approval is already required in order for prepayment to occur." Defs.' Mem. at 1. The plaintiffs' contention that Section 250 does not apply to the Mortgage Note is based upon their position that the Mortgage Note footnote was invalid. However, because the

13

Court has found that the footnote is valid, the plaintiffs' challenge to the applicability to Section 250 must also fail.  And based on the direction provided by <u>Chevron</u>, the Court finds that the Secretary's conclusion that Section 250, codified as amended at 12 U.S.C. § 1715z-15(a), is applicable to the Mortgage Note is a permissible interpretation of the statute.  Important to the Court's conclusion is the history underlying the enactment of the Mitchell-Lama Program by the New York state legislature, which is clearly identified with the concerns that motivated Congress to subsequently enact the NHA, and the footnote in the Mortgage Note is fully consistent with those concerns.  <u>See</u> <u>Chevron</u>, 467 U.S. at 863 (similarly stating that the legislative history identified the policy concerns that motivated the enactment of the legislation).  So for this reason too, the Secretary's decision must be affirmed.

### IV.  Conclusion

For the foregoing reasons, the defendants' motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED.**[4]

**SO ORDERED.**[5]

_____

REGGIE B. WALTON
United States District Judge

---

[4] The defendants also have a Motion to Strike Plaintiffs' Response to Defendants' Motion to Dismiss and to Compel the Return to Defendants of Privileged Documents, and For an Emergency Stay Pending Expedited Review of This Motion currently pending before the Court; however, given the Court's ruling on the Defendants' Motion to Dismiss, this motion has become moot and is denied for that reason.

[5] This Memorandum Opinion renders the Order granting the Defendants' Motion to Dismiss entered on March 27, 2009, an appealable Order.